UNITED STATES *v.* ELECTROLUX CORPORATION (No. 4954)[1]

---

[1] C.A.D. 718.

United States Court of Customs and Patent Appeals, July 16, 1959

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, *Alfred A. Taylor, Jr.*, trial attorney (*Daniel I. Auster*, trial attorney, of counsel), for the United States.

*Lane, Young & Fox* (*William H. Fox* of counsel), for appellee.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN, and JOHNSON (retired), Associate Judges.

RICH, Judge, delivered the opinion of the court:

This appeal by the government is from a judgment of the United States Customs Court, C.D. 1955, sustaining the protest of Electrolux Corporation, appellee, that imported finished electrical floor polishers were properly dutiable under paragraph 353 of the Tariff Act of 1930 (as modified) as articles having as an essential feature an electrical element or device, rather than as household utensils under paragraph 339, as classified by the Collector.

The pertinent provisions are:

Paragraph 339, as modified by T.D. 52739:

Table, household, kitchen and hospital utensils, and hollow or flat ware, not specially provided for, * * * whether or not containing electrical heating elements as constituent parts:

\* \* \*

Other base metal, including steel (except electric flatirons and household food grinding or cutting utensils) _____ 20% ad. val.

Paragraph 353, as modified by T.D. 52739:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other * * * _____ 13¾% ad val.

The case was submitted upon an agreed statement of facts, those pertinent being, briefly, that the merchandise consists of finished electrical floor polishers containing all of the electrical parts necessary to enable them to function solely by means of electrical power, each polisher having as an essential feature a built in 110 volt AC-DC electric motor as an integral part thereof, that the polishers are incapable of operation without such motors, do not contain any electrical heating elements, and are chiefly used in the household or home.

The Customs Court came to the conclusion that the imported electric floor polishers were improperly classified as household utensils and that they should be classified in paragraph 353 as articles having

as an essential feature an electrical element or device. All agree with the view of the lower court that the electric motor of the floor polisher is "an electrical element or device" within the meaning of paragraph 353.

The government's position, starting from the admission that paragraphs 353 and 339 both describe the floor polishers, is that classification in paragraph 339 is proper for two reasons: (1) legislative history shows a Congressional intent to put such goods in the household utensils category and (2) such classification is compelled by "the legal doctrine, firmly established in customs jurisprudence, that a use designation prevails over an *eo nomine*, or a descriptive designation."

The historical background of this case is both interesting and unusual and involves, also, the dutiable status of household electric vacuum cleaners which, in that they are electrically powered hand-operated machines for cleaning floors, are clearly closely akin to electric floor polishers. As may be seen from the opinion of this court in *Frank P. Dow Co., Inc.*, v. *United States*, 21 CCPA 282, T.D. 46816, both of these household appliances were formerly classified under paragraph 339 of the Tariff Act of 1922 as household utensils, rather than as machines under paragraph 372 thereof. (The importer there was Electrolux, Inc.). The issue in that case was which of those two provisions was more specific and the court decided that "under the doctrine of chief use" the household cleaners and polishers were more specifically provided for as household utensils than as machines.

The Tariff Act of 1930 contained, as an entirely new provision, paragraph 353 on electrical articles, the third clause of which is involved here. It would appear that the Bureau of Customs promptly started classifying electric vacuum cleaners and floor polishers under this new section as articles having as an essential feature an electrical element or device, to wit an integral driving motor. We know this is true as to vacuum cleaners because of the 1934 ruling published at T.D. 47218(2) and the provision in the August 5, 1935 Trade Agreement with Sweden that this classification of household vacuum cleaners should be continued during the life of that agreement. (T.D. 47785). As will presently appear, household electric floor polishers must have been similarly classified. On June 17, 1950 the aforesaid agreement with Sweden was terminated. October 18, 1950 the Bureau of Customs published a ruling, T.D. 52576(1), revoking the prior ruling, T.D. 47218(2), that vacuum cleaners should be classified in paragraph 353 and directed that they should be classified in paragraph 339 as household utensils. May 22, 1951 a similar ruling, T.D. 52731(1), was issued with respect to household electric floor polishers. Since this ruling stated that they should be so classified *rather than* under para-

graph 353, we conclude that the practice must have been to so classify them. It will be seen that this was an administrative practice of many years standing under a statute which was not changed. Why, then, was the practice changed?

Appellee tells us that this shifting about was the result of the Customs Court decision in *G. E. Meissner Co.* v. *United States,* 73 Treas. Dec. 791, T.D. 49556, decided in 1938, and that the change took place shortly after the 1950 termination of the agreement with Sweden (T.D. 52505). Notwithstanding the fact that twelve years had passed since the *Meissner* decision, the 1950 ruling on vacuum cleaners, revoking the classification under paragraph 353, stated that the change was made "following the principle of T.D. 49556," which is the *Meissner* case. That case dealt with certain lamps and the competing provisions involved were paragraphs 339 and 353, both of which the court felt described the lamps. In its opinion the court said, referring to paragraph 339, "such a use provision must prevail over one covering articles having as an essential feature an electrical element." This would appear to be the "principle" on which the Collector relied and it is also the allegedly firmly established legal doctrine on which the government heavily relies in the case now before us.

 It is our opinion that in view of the long established practice of classifying the instant merchandise, and goods closely akin to it, under the electrical articles paragraph, 353, as shown by the foregoing history, such classification should not have been disturbed, and should not now be disturbed, in the absence of compelling reasons and therefore that the judgment below must be affirmed unless appellant makes a very clear showing of error. The period of consistent classification here is nearly as long as that involved in *United States* v. *H. Bayersdorfer & Co.*, 16 Ct. Cust. Appls 43, T.D. 42717, wherein our predecessor court said, referring to a change made by department order after 17 years,

Such a long-continued administrative classification of the merchandise should not be disturbed at this late day. Importers have a right to rely on long-continued administrative practice and if any change is to be made it should be made by Congress * * *.

Appellant, the government, argues first that legislative history shows a Congressional intent to put electric floor polishers for household use in the household utensils paragraph. Its strongest argument on this score relies on a portion of a Senate Finance Committee report saying that electrical machinery and apparatus was dutiable, prior to the 1930 Act, chiefly under paragraphs 372 as machinery, 399 as miscellaneous manufactures of metal, 368 as meters *"and paragraph 399 as household utensils."* (Appellant's emphasis.) The report,

which was discussing what is now paragraph 353, then said: "All these products, *with the exception of such as are household utensils,* lighting fixtures, or laboratory instruments, are now grouped together at a single rate." Such grouping was, of course, in paragraph 353. The argument runs that this shows an intent to leave all "household utensils" under paragraph 339. Appellant has cited nothing in the nature of history which is more convincing.

Persuasive as this might seem at first glance, it quickly loses force as an argument when we ponder the inclusion in the list of exemplars *in paragraph 353* of such "household utensils" as electric fans, possibly portable tools, but certainly ranges, washing machines and refrigerators. These are very similar in kind to floor polishers. The net effect is that we find no clear indication of a legislative intent to place electric floor polishers in paragraph 339 instead of paragraph 353. It is not necessary or proper here to speculate as to what electrical appliances were intended to be left in paragraph 339 but it is possible that the continuation in that paragraph of the phrase "containing electrical heating elements as constituent parts," which was in the 1922 Act, has a bearing on the matter. Appellant's first point has not convinced us of error below.

The next and major argument of appellant is that classification in paragraph 339 is compelled by the fact that it is a "use" provision which *must* prevail over paragraph 353, which is said to be an *eo nomine* or a descriptive designation. This result is supposed to be required by a firmly established "doctrine" that, under the circumstances, the use designation prevails. The highest, and we believe the only, authority cited for this dogmatic proposition in appellant's brief is the opinion of the Customs Court in the *Meissner* case, supra.

■ While it is true that this court and its predecessor on many occasions have held that a use provision *should* prevail over some other, and have used the word "doctrine" in referring to the "doctrine of use," an examination of a sufficient number of cases will show that this so-called doctrine is subject to "exceptions" whenever it comes into conflict either with a clearly expressed legislative intent or a competing provision which is obviously more specific than the "use" provision, as applied to the merchandise at bar. Actually, the "doctrine" appears to be a convenient rule of thumb for resolving issues where the competing provisions are otherwise in balance. It grew out of cases such as *Fink* v. *United States,* 170 U.S. 584, where "medicinal preparations," a use designation, was *in fact* more specific than "chemical compounds and salts." After discussing that case, our predecessor court said, in *Drakenfeld & Co.* v. *United States,*

9 Ct. Cust. Appls. 124, 126, T.D. 37979, that the doctrine could be precisely stated as follows:

> * * * this designation according to *a specific use* should now prevail over a competing description of a general character, without special limitations as to use or other qualification.

It took that quotation, adding the emphasis shown, from its own opinion in a prior *Drakenfeld* case, 2 Ct. Cust. Appls. 512, 515, T.D. 32248. In both of those cases pigments or colors were involved and the question was whether a tariff provision for such materials was more specific than, and should prevail over, a general provision for "chemical compound or salt" or "salts." The holdings in these and other like cases that the use provisions were the more specific were not holdings that use provisions are always more specific. Clearly they are not, as shown for instance in *M. Pressner & Co.* v. *United States*, 42 CCPA 48, C.A.D. 568. That case, incidentally, involved paragraph 339 and we note, in passing, the following comment in the opinion which has a bearing on the present issue:

> If Congress had intended paragraph 339, *supra*, to apply to all household utensils, it would not have provided therein only for "household utensils not specially provided for."

What was referred to in the next case cited as "the doctrine of *favoring* classification by use" (our emphasis), was not applied in *United States* v. *Pfaltz & Bauer (Inc.), et al.*, 16 Ct. Cust. Appls. 358, T.D. 43091, ("alloys *used* in the manufacture of steel", n.s.p.f. vs. "aluminum * * * alloys" specifically) or in *United States* v. *Damrak Trading Co., Inc.*, 43 CCPA 77, C.A.D. 611, where the court felt it could see a clear legislative intent not to classify the goods under the use provision.

We therefore disagree with appellant, on a review of the cases, that there is any imperative in what it chooses to regard as a "firmly established" doctrine of use which requires us to classify electric floor polishers as household utensils in paragraph 339. The rule is no more than an aid to construction and one aspect of the broader rule of relative specificity. Applying the latter rule, it seems to us that the appellee is on sound ground in contending that "household utensils" is a very broad class indeed, aptly describing not only electrical appliances of all kinds but any useful tool, implement, instrument or vessel used in the household. We are of the view that "articles having as an essential feature an electrical element or device," paragraph 353 more closely describes an electric floor polisher and we agree with appellee that the latter provision is more specific because it is less easily satisfied. This view is, we think, in accord with the holding in the Supreme Court decision in *Fink* v. *United States*, supra, that "medicinal preparations" more closely describes a medicine which is a chemical compound than "chemical compounds and salts."

In making a choice between paragraphs 339 and 353 there is one further point with which we wish to deal. It will be observed that each of these paragraphs contains a "not specially provided for" clause. Both parties have urged upon us the view that we should, because of this fact, read the paragraphs as though this clause appeared in neither of them, the appellant having stated at the argument that the clauses "cancel out." Statutory construction and the application of statutory language to specific fact situations is not algebra nor an exact science akin to mathematics. ■ We must take all of the words Congress wrote into the statutory provisions and do our best to gather therefrom what it was Congress was trying to accomplish. The mere happenstance that a paragraph asserted by the importer to be applicable contains a "not specially provided for" clause is no reason for reading a similar clause out of the paragraph relied on by the collector. We must heed the clause for the simple reason that it is there. This being the case as to both paragraphs, we can ignore it in neither. As we have already suggested, the fact that it appears in paragraph 339 is at least some indication that Congress believed that some household utensils might be classified elsewhere than in paragraph 339, notwithstanding the fact it is a use provision. The presence of the n.s.p.f. clause in paragraph 353, on the other hand, does not detract from this indication and is not a reason for disregarding the clause in paragraph 339.

The only cases on this point called to our attention, and our research has found no others, are *United States* v. *Richardson*, 13 Ct. Cust. Appls. 280, T.D. 41214, *United States* v. *Lo Curto & Funk*, 17 CCPA 19, T.D. 43319, and *United States* v. *S. S. Perry*, 25 CCPA 282, T.D. 49395.

The *Richardson* case dealt with two clauses containing the n.s.p.f. clause and in considering them the court said:

Both paragraphs contain the words "not specially provided for," so that expression *does not affect their relative specificity* (Emphasis ours.)

We do not disagree with that statement. However, it is no directive to disregard the n.s.p.f. clauses, to read the Tariff Act provisions as if it did not appear therein or to cancel them out. It is not even an indication that the court in the *Richardson* case disregarded them. When, therefore, we find that in the later *Lo Curto* and *S. S. Perry* cases the court, *on the sole authority of the Richardson case*, said that the n.s.p.f. clauses "should be disregarded," it was expanding the statement in the *Richardson* case (we are inclined to believe unintentionally) beyond the necessities of the situation and creating an unsound precedent, if taken literally. In the process of endeavoring to find in the statutes the intent of Congress there is one thing we can be reasonably sure of and that is that Congress did not intend the courts

to disregard any of the words of the statutes it has enacted. It is, therefore, our present view that the correct position is that expressed in the above quotation from the *Richardson* case, the *Lo Curto* and *S. S. Perry* cases notwithstanding.

For the reasons expressed above, the judgment of the Customs Court is *affirmed*.

SMITH, J., not present at the argument, was called in to participate in the decision pursuant to stipulation of counsel.

---

WORLEY, Chief Judge, dissenting.

I am unable to agree with the result reached by the majority. In my opinion the floor polishers are no more specifically provided for under paragraph 353 as articles having as an essential feature an electric element or device than under paragraph 339 as household utensils. Not only do they clearly fall within the language of both paragraphs, and it is obvious that each paragraph embraces a wide variety of other articles, but it is expressly agreed they are chiefly used in the home. Thus it would seem proper to apply the well-settled rule that a use provision ordinarily takes precedence over an *eo nomine* or descriptive provision, *United States* v. *Lansen-Naeve Corp.*, 44 CCPA 31, C.A.D. 632, and cases there cited, even if, as suggested by the majority, that rule is to be applied only where the question of classification is otherwise in balance. I think the presumption that Congress intended to classify articles by use rather than by name or description, where they come within the language of paragraphs of both types, is entitled to substantially more weight than it is accorded here. As stated in *Lansen-Naeve*, the rule requires classification in the use paragraph "unless there is a clearly expressed congressional intent to the contrary." I do not think the instant record establishes such a clear congressional intent.

The majority view as to long-continued administrative practice seems to be based largely on conjecture, rather than any actual evidence that floor polishers were classified under paragraph 353 for any substantial period. Moreover, I am aware of no judicial or legislative ratification of the supposed administrative practice; even so, such practice, if erroneous, does not necessarily become legally sacrosanct merely because it is venerable. *C. J. Tower & Sons* v. *United States*, 44 CCPA 41, C.A.D. 634.

I do not think the evidence here is sufficient to discharge the importer's burden of proving the collector's classification wrong and the claimed classification right. I would *reverse*.

JOHNSON, J., joins in this dissent.