**NIPPON KOGAKU (USA), INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 81–29.**

United States Court of Customs and Patent Appeals.

Feb. 25, 1982.

Rehearing Denied April 15, 1982.

Joel K. Simon and Margaret H. Sachter, New York City, for appellant.

Steven P. Florsheim and Robert B. Sherman, New York City, for amicus curiae.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Joseph I. Liebman, Attorney-in-Charge, and Jerry P. Wiskin, New York City, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN, MILLER and NIES, Associate Judges.

MARKEY, Chief Judge.

Nippon Kogaku (Kogaku) appeals from the judgment of the United States Court of International Trade sustaining the classification of Slit-Lamp Microscopes under item 709.05, Tariff Schedules of the United States (TSUS) and refusing classification under item 708.73 (TSUS). We affirm.

### Background

The subject merchandise was imported from Japan by Kogaku and entered at New York in July 1972 and January 1975. Upon liquidation the merchandise was classified under item 709.05, providing:

Schedule 7, Part 2, Subpart B

> Medical, dental, surgical and veterinary instruments and apparatus (including electro-medical apparatus and ophthalmic instruments), and parts thereof:
>     Optical instruments and appliances, and parts thereof:
>         Mirrors and reflectors ....
>         Binocular loupes for eye examinations ...........

| | | |
|---|---|---|
| 709.05 | Other ................ | 25% ad val. |

Kogaku contested the liquidated classification, claiming that the imported merchandise is properly classifiable under item 708.-73, providing:

Schedule 7, Part 2, Subpart A

> Compound optical microscopes; electron, proton, and similar microscopes and diffraction apparatus; all the foregoing whether or not provided with means for photographing or projecting the image; frames and mountings for the foregoing articles, and parts of such frames and mountings:
>     Compound optical microscopes:
>         Not provided with means for photographing or projecting the image:

\*      \*      \*      \*      \*      \*

| | | |
|---|---|---|
| 708.73 | Valued over $50 each .......... | 22.5% ad val. |

A Slit-Lamp Microscope is a device used by ophthalmologists and optometrists to assist in the examination and the diagnosis of abnormalities or diseases of the eye to study drug effects and to fit contact lenses. The principal components of the Slit-Lamp Microscope are (1) the "main unit," (2) a cross-slide table which contains the power supply and to which the main unit is attached by a swivel arm and (3) a chin rest assembly permitting the patient's head to be placed in the proper position for an eye examination. The "main unit" consists of two interconnected systems: (a) an observation system employing twin objective lenses which provide a magnified image of the object viewed and twin eyepieces which further magnify the image, and (b) a slit-lamp system which directs a beam of light into the eye thereby sectioning the eye and permitting a view of various portions thereof, such as the cornea, vitreous humor and aqueous humor.

Appellant Kogaku and amicus Topcon Instrument Corporation[1] (an importer and distributor of similar slit-lamp microscopes) argue that in construction and operation, the imported articles are compound optical microscopes, properly classifiable under item 708.73, and specifically excluded from classification as ophthalmic instruments under item 709.05, by virtue of headnote 1(ii) of Schedule 7, part 2, subpart B, providing:

*Subpart B headnote:*

1. This subpart does not cover—

\*      \*      \*      \*      \*      \*

___

1. Arguments of Kogaku and *amicus* coincide with respect to the issues here addressed. Reference to arguments of Kogaku will therefore encompass the similar arguments of *amicus.*

. (ii) spectacles, lorgnettes, goggles and similar articles; *microscopes* and diffraction apparatus (*see subpart A of this part*); [Emphasis supplied.]

The Court of International Trade, per Boe, *J.*, held the imported Slit-Lamp Microscopes properly classified as medical (ophthalmic) optical instruments under item 709.05 TSUS, finding that competent evidence had been submitted that, in commercial and trade usage, the term "compound optical microscope" did not include the subject merchandise. The court further found that without contradiction, industry, as well as ophthalmologists and optometrists, principal users of the merchandise, refer to it as a slit-lamp microscope or a slit-lamp, not as a compound microscope.

Relying upon legislative history, the Court of International Trade determined that there was Congressional intent to limit the scope of the term "compound optical microscope," as used in the tariff schedule, to "general-purpose microscopes and those designed for industrial use or research laboratories and to exclude from the term 'compound optical microscope,' those specialized instruments used by medical practitioners to examine parts of the body for the purpose of diagnosing diseases or abnormalities."

## OPINION

Kogaku argues that the plain language of the Subpart B headnote 1(ii) mandates that all devices falling within the general definition of a microscope, including those having an ophthalmic use, be omitted from classification under Subpart B. Relying on the structure and function of the Slit-Lamp Microscope observation system, Kogaku contends that the articles are compound microscopes and should be classified as such under item 708.73.

Kogaku asserts that the Court of International Trade disregarded the plain language of headnote 1(ii), creating an ambi-

guity within the statute where none existed. The court's resolution of that ambiguity by reference to legislative history and commercial usage allegedly rendered meaningless headnote 1(ii).

█ Initially, we note that the decision of the classifying official is supported by a statutory presumption of correctness. 28 U.S.C. § 2639 (1980). Kogaku bears the burden of establishing that the classification is erroneous and that the claimed classification is correct. *See e.g., United States v. A. Johnson & Co.*, 588 F.2d 297 (Cust. & Pat.App.1978).

█ Tariff acts, like other statutes, are to be construed to carry out the intent of the legislature. *Sandoz Chemical Works, Inc. v. United States*, 43 CCPA 152, C.A.D. 623 (1956). In determining that intent, tariff terms are to be construed in accordance with their common and commercial meanings, which are presumed to be the same. *United States v. Victoria Gin Co., Inc.*, 48 CCPA 33, C.A.D. 759 (1960); *Floral Arts Studio v. United States*, 46 CCPA 21, C.A.D. 690 (1958). In determining the common meaning of a term, courts may and do consult dictionaries, scientific authorities, and other reliable sources of information including testimony of record. *Trans-Atlantic Co. v. United States*, 60 CCPA 100, C.A.D. 1088, 471 F.2d 1397 (1973); *United States v. John B. Stinson Co.*, 21 CCPA 3, T.D. 46319 (1933).

The Government does not contest that the Slit-Lamp Microscope falls within the general dictionary definitions of a "microscope" and a "compound microscope."[2] Likewise neither Kogaku nor *amicus* contests that the Slit-Lamp Microscope is commercially recognized as an ophthalmic instrument.

The issue before us is, therefore, whether the "microscope" exclusion in the superior heading to item 709.05 was intended to exclude the Slit-Lamp Microscope from classi-

**2.** Webster's New Collegiate Dictionary (1976) provides the following definitions: microscope 1: an optical instrument consisting of a lens or combination of lenses for making enlarged images of minute objects; [at 727] compound microscope: a microscope consisting of an objective and an eyepiece mounted in a drawtube [at 232].

fication under its commercially recognized description.[3]

While we are mindful of the Supreme Court's direction that extraneous aids, such as legislative history, "are only admissible to solve doubt and not to create it,"[4] we note that the "plain meaning" of the word "microscope" in headnote 1(ii) contributes little to our understanding of whether Congress intended to exclude all ophthalmic instruments including a combination of enlarging lenses from classification under item 709.05 as ophthalmic instruments.

■ As the Supreme Court has noted, most recently in *Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1975):

> When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" *United States v. American Trucking Assns.*, 310 U.S. 534, 543–544, [60 S.Ct. 1059, 84 L.Ed. 1345] (1940) (footnotes omitted). See *Cass v. United States*, 417 U.S. 72, 77–79 [94 S.Ct. 2167, 2170–2171, 40 L.Ed.2d 668] (1974). See generally Murphy, Old Maxims Never Die: The "Plain Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts, 75 Col.L.Rev. 1299 (1975).

■ We, therefore, find no impediment to review of extrinsic aids to determine the intended scope of the involved classification provisions.

The *Tariff Classification Study (Study)*, a recognized part of the legislative history of the Tariff Schedules enacted in 1962,[5] provides the most significant insight into the breadth of the relevant provisions and their relationship to their predecessor provisions. The *Study*, prepared by the Tariff Commission in 1960 in contemplation of revision of the rate schedules established under the Tariff Act of 1930, contains proposed provisions that were, in relevant part, enacted into law verbatim in 1963.

The accompanying explanatory notes describe the intended scope of the proposed provisions:

> Items 709.01 through 709.05 cover optical instruments and appliances. Item 709.01 covers principally medical and surgical mirrors and reflectors, now dutiable under paragraph 228(b), whether or not such mirrors and reflectors are used for reflecting images or for reflecting light on objects. The current rate of duty is proposed. The binocular loupes provided for in item 709.03 are currently dutiable under paragraph 228(b) as microscopes. The proposed rate for such loupes is the current rate of duty applicable to most imports of these articles. *Item 709.05 covers all other optical instruments and appliances.* Included among such instruments would be ophthalmoscopes, orthoptic and sight testing apparatus, cases of trial lenses and spectacles, and similar articles all of which are currently dutiable under paragraph 228(a). The existing rate of duty for such articles is reflected in item 709.05. [Emphasis added.]

The referenced predecessor provision to item 709.05 specifically included slit lamps and corneal microscopes (forerunners of Slit-Lamp Microscopes) within its scope. Paragraph 228(a) of the Tariff Act of 1930 read:

> 228. (a) Spectrographs, spectrometers, spectroscopes, refractometers, saccharimeters, colorimeters, prismbinoculars, cath-

---

3. We, of course, do not here pass on the scope of the "microscope" exclusion contained in headnote 1(ii) beyond whether that term excludes the subject Slit-Lamp Microscope.

4. *Railroad Commission of Wisconsin v. Chicago Burlington & Quincy Railroad Co.*, 257 U.S. 563, 588–9, 42 S.Ct. 232, 237, 66 L.Ed. 371 (1921); *see also United States v. Kung Chen Fur Corporation*, 38 CCPA 107, C.A.D. 447, 188 F.2d 577 (1951).

5. *See e.g., Rifkin Textiles Corp. v. United States*, 54 CCPA 138, C.A.D. 925, *cert. denied*, 389 U.S. 931, 88 S.Ct. 294, 19 L.Ed.2d 283 (1967); *United States v. Andrew Fisher Cycle Co., Inc.*, 57 CCPA 102, C.A.D. 986, 426 F.2d 1308 (1970); *National Polychemicals, Inc. v. United States*, 58 CCPA 37, C.A.D. 1001, 433 F.2d 1327 (1970).

384

etometers, interferometers, haemacytometers, polarimeters, polariscopes, photometers, ophthalmoscopes, *slit lamps, corneal microscopes, optical measuring or optical testing instruments*, testing or recording instruments for ophthalmological purposes, frames and mountings therefor, and parts of any of the foregoing; all the foregoing finished or unfinished, [Emphasis added.] . . . 60% *ad val.*

Appellant argues that deletion of the *eo nomine* reference to slit lamps evidences a legislative intent to reclassify those items within the provision for compound microscopes (item 708.73). That argument is unsupported by any comment in the legislative history. Indeed, the indication is that proposed item 708.73 was intended to replace only predecessor paragraph 228(b) [6] and not any portion of paragraph 228(a).

Alongside the rate schedules proposed in the *Study* are references to the corresponding provisions in the Tariff Act of 1930. Adjacent proposed item 709.05 is found reference to paragraph 228(a). *Tariff Classification Study*, Proposed Revised TSUS p. 546 (1960). Reference to paragraph 228(b) *only* is found adjacent proposed items 708.-71–73. *Tariff Classification Study*, Proposed Revised TSUS, p. 544 (1960). It, therefore, appears that the articles encompassed within the scope of paragraph 228(a) were not intended to be reclassified under item 708.73. That conclusion is consistent with the general usage and denomination of the trade as determined by the Court of International Trade.

Further evidence of the intended scope of item 709.05 can be gleaned from the disposition of a proposed amendment to the superior heading to that item. A statement filed with the Ways and Means Committee asked that the superior heading be *clarified* by adding this underscored language:

Medical, dental, surgical and veterinary apparatus (including *examining, diagnostic and operating instruments and* electro-medical apparatus and ophthalmic instruments), and parts thereof.

The Tariff Commission responded to that suggestion.

While the Commission is in agreement with the submission as to the intended scope of the provision, it believes that the provision as presently worded is sufficiently clear and will accomplish the desired result.

*Tariff Classification Study*, First Supplemental Report p. 73 (1962). The Ways and Means Committee proceeded in accordance with the Commission's view.[7]

■ We are, therefore, led to the conclusion that the Subpart B Headnote excluding "microscopes" from classification thereunder, was not intended to exclude examining and diagnostic instruments such as the Slit-Lamp Microscope.[8]

Kogaku properly conceded at oral argument that, absent the exclusionary headnote, there exists no question of relative specificity between the contested classification and that claimed. Item 709.05 is acknowledged to be more specific.

Accordingly, we agree with the determination of the Court of International Trade that headnote 1(ii) does not preclude classification as an ophthalmic instrument and affirm classification of the subject merchandise under item 709.05.

AFFIRMED.

6. Paragraph 228(b) of the Tariff Act of 1930 read:

228. (b) Azimuth mirrors, parabolic or mangin mirrors for searchlight reflectors, mirrors for optical, dental, or surgical purposes, photographic or projection lenses, sextants, octants, opera or field glasses (not prism binoculars), telescopes, *microscopes*, all optical instruments, frames and mountings thereof, and parts of any of the foregoing; all the foregoing finished or unfinished, *not specially provided for*, [Emphasis added.] . . . 45% *ad val.*

7. Other sources of legislative history have been cited by the parties and *amicus.* Discussion of those sources is unnecessary to determination of the relevant legislative intent.

8. The demonstrated effort to avoid redundancy within the superior heading may further account for deletion of specific reference to slit lamps contained in paragraph 228(a), in view of the remaining reference to ophthalmic instruments.