**CARL ZEISS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 98–86.
Court No. 95–11–01456.

United States Court of
International Trade.

June 23, 1998.

Mark K. Neville, Jr., New York City, for Plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; Civil Division, Dept. of Justice, Commercial Litigation Branch (Barbara M. Epstein ), and Office of Assistant Chief Counsel, International Trade Litigation, United States (Chi Choy ), Washington, DC, for Defendant.

### OPINION and ORDER on CROSS–MOTIONS FOR SUMMARY JUDGMENT

WATSON, Senior Judge.

The court has before it cross-motions for summary judgment regarding imported microscopes and parts or accessories thereof,

imported in 1994 and 1995 from Germany by Carl Zeiss, Inc. (hereinafter referred to as "Zeiss").

The merchandise was classified under Heading 9011 of the Harmonized Tariff Schedules of the United States ("HTSUS"), specifically under subheading 9011.10.40, as "compound optical microscopes ... stereoscopic microscopes: Provided with a means for photographing the image." The parts and accessories were classified under subheading 9011.90.00, HTSUS, as "parts and accessories."

Zeiss claims the microscopes are properly classifiable under Heading 9018, which provides for "instruments and appliances used in medical, surgical, dental or ·veterinary sciences ...," specifically, under subheading 9018.90.20, providing for such instruments or appliances "other" than "optical instruments and appliances and parts and accessories thereof." Zeiss also claims that certain parts and accessories (such as the "Ram/Eprom" and "certain disks") are classifiable under Heading 8542 or 8524, respectively.

The competing provisions, as they appear in the HTSUS are as follows:

Classified:

| | |
|---|---|
| 9011 | Compound optical microscopes, including those for photomicrography, cinemicrography or microprojection; parts and accessories thereof: |
| 9011.10 | Stereoscopic microscopes: |
| 9011.10.40 | Provided with a means for photographing the image |
| 9011.10.80 | Other |

Claimed:

| | |
|---|---|
| 9018 | Instruments and appliances used in medical, surgical, dental or veterinary sciences, including scintigraphic apparatus, other electro-medical apparatus and sight-testing instruments; parts and accessories thereof... |
| 9018.90 | Other instruments and appliances and parts and accessories thereof: |
| 9018.90.10 | Mirrors and reflectors |
| 9018.90.20 | Other |

For purposes of resolving these motions the Court finds that there are no material issues of fact in the case. The imported microscopes are stereoscopic compound optical microscopes principally used as medical or surgical instruments or appliances and parts thereof.

In a nutshell, the legal issue before the court is whether the imported microscopes should be classified as compound optical microscopes under Heading 9011 or as instruments used in surgery under Heading 9018.

Briefly stated, Plaintiff argues that the merchandise is not described by the common or commercial meaning of the term "compound optical microscope." Plaintiff further argues that Heading 9018 is more specific than Heading 9011 and therefore more accurately describes the importations. Plaintiff also argues that the classification of microscopes such as those before the Court is controlled by a previous decision of the Court.

There is no question that the imported microscopes have special design features to make them particularly useful for surgery. These include magnification levels that are considerably lower than those of microscopes used for laboratory or industrial purposes, specially configured stands and movement mechanisms designed to aid hands-free use in surgery, built in co-axial sources of illumination (as opposed to the separate light sources usually placed underneath the object in microscopes used for laboratory or industrial purposes), and a notable difference in price in which these importations are approximately 10 times more costly than compound optical microscopes used for non-surgical purposes. These importations also do not have the platform usually found under the lenses of a conventional microscope.

The Government argues that the importations are properly classifiable under Heading 9011 because they are within the meaning of compound optical microscopes even though they may be used for surgical purpose. The Government points to Explanatory Note 90.18 and argues that by providing that Heading 90.18 does not cover "microscopes of Heading 90.11," they are classifiable under

Heading 9011 even if such instruments are used in surgery.

In a straightforward comparison of the relative specificity of these two provisions, the Court finds that the tariff description of these microscopes by the actual details of their distinctiveness within the field of microscopes is more precise than their description as belonging to the general class of instruments used for surgical or medical purposes.

■ Zeiss argues that Heading 9018 is more specific than Heading 9011 because of the general rule that "use" provisions are more specific than *eo nomine* provisions. But that is not really a rule. It is an aid to deciding between provisions when their degree of relative specificity is not otherwise significantly distinguishable. Thus, in the venerable case of *U.S. v. Snow's United States Sample Express Co.*, 8 Cust.App. 351 (1918) the Court of Customs Appeals held that, with respect to scalloped madras muslin curtains, a tariff provision for all scalloped fabrics, even though it specified "by whatever name known" was not as specific as a tariff provision for curtains. One can say that "scalloped fabrics" and "curtains" were both rather general terms but the latter had the additional virtue of describing the importation by use. Similarly, in *E.M. Chemicals v. United States,* 9 Fed. Cir. (T) 33, 920 F.2d 910 (1990) the Court of Appeals for the Federal Circuit held that liquid crystals were more accurately described by their use as parts of indicator panels or other visual signaling apparatus than by a residual provision for "chemical mixtures." There too, the precision of the competing provisions was not great and use could certainly play a deciding role.

Plaintiff, with commendable candor, acknowledges that there are other court decisions indicating that giving preference to a use provision over an *eo nomine* description is not an ironclad rule. Plaintiff points to *Totes, Inc. v. United States,* 14 Fed. Cir. (T) ——, 69 F.3d 495 (1995) citing *United States v. Electrolux Corp.* 46 C.C.P.A. 143, 147 (1959).

In the *Electrolux* case the court held that electrical floor polishers were more specifically described by their structure as articles having an essential electrical element rather than by their use as "household utensils." In the *Totes* case it was held that a so-called "organizer" used to store items in an automobile trunk was properly classifiable under a provision for trunks "and similar containers" an *eo nomine* provision, rather than by their use as "parts and accessories" of motor vehicles.

In reviewing these cases and in considering the question of relative specificity insofar as it involves a contest between a provision by use and a provision by name, it becomes apparent that there is no firm doctrine giving priority to a use provision. It is worth quoting the analysis of this point set out in *United States v. Electrolux Corp.* at 46 CCPA 147:

> While it is true that this court and its predecessor on many occasions have held that a use provision *should* prevail over some other, and have used the word "doctrine" in referring to the "doctrine of use," an examination of a sufficient number of cases will show that this so-called doctrine is subject to "exceptions" whenever it comes into conflict either with a clearly expressed legislative intent or a competing provision which is obviously more specific than the "use" provision, as applied to the merchandise at bar. Actually, the "doctrine" appears to be a convenient rule of thumb for resolving issues where the competing provisions are otherwise in balance.

It appears to the Court that ambit of Heading 9018 is quite analogous to that of the provision for household utensils involved in *United States v. Electrolux Corp.* Both provisions display a certain type of specificity as to the arena of use but, within that zone, they are noticeably broad. Stated differently, one might say that the class of medical instruments is a very broad class indeed, aptly describing any useful tool, implement, instrument or vessel used in the medical, surgical, dental or veterinary sciences. From this point of view, a provision for compound optical microscopes, further specified as being stereoscopic and still further as having the means for photographing the image, seems to describe a quite narrow and

specific type of the general class of microscopes.

This reasoning leads to the conclusion that, absent countervailing considerations, the specificity of the provision for compound optical microscopes is greater than that for medical instruments. With this in mind, the Court turns to other arguments made by Zeiss.

Zeiss places great emphasis on the case of *Nippon Kogaku (USA), Inc., v. United States,* 1 CIT 328, 521 F.Supp. 466 (1981), *aff'd* 69 C.C.P.A. 89, 673 F.2d 380 (1982), going so far as to say that it held that microscopes used in the medical sciences must be classified as medical instruments. The Government argues strenuously that the holding in *Nippon Kogaku* was narrowly limited to the type of microscopes involved in that case, namely, slit-lamp microscopes, a form of compound optical microscopes, used as ophthalmic instruments.

Unfortunately for Plaintiff, close analysis of that decision does not permit a broad interpretation of the outcome. That case involved a microscope used by opthamologists to examine the eye. It was classified under Item 709.05 of the Tariff Schedules of the United States ("TSUS"), a provision for medical instruments that specifically included "ophthalmic instruments," but excluded "microscopes." The importer sought classification as compound optical microscopes under Item 708.73 TSUS. The trial court upheld the classification, notwithstanding the exclusion of microscopes. The appellate court affirmed. The rationale of the decision was that legislative history showed an intention to treat slit-lamp microscopes as ophthalmic instruments. The trial court at times expressed its conclusions about the legislative history in broad terms that could be viewed as stating a general distinction between "general-purpose," along with "industrial" and "research" compound optical microscopes on the one hand and specialized microscopes used for medical diagnosis on the other hand. See, 521 F.Supp. 466, 1 CIT 328, 335. Even that rather broad treatment would not necessarily extend to microscopes used for surgery. In any event, the opinion of the appellate court left no doubt that it

was not positing a broad class of medical or surgical microscopes but was only ruling on the slit-lamp microscopes.

In affirming the decision of the trial court that the classification was correct, the appellate court summarized the dispute and limited its holding as follows:

The Government does not contest that the Slit–Lamp Microscope falls within the general dictionary definitions of a "microscope" and a "compound microscope." Likewise, neither *Kogaku* nor *Amicus* contests that the Slit–Lamp Microscope is commercially recognized as an ophthalmic instrument.

The issue before us is, therefore, whether the "microscope" exclusion in the superior heading to Item 709.05 was intended to exclude the Slit–Lamp Microscope from classification under its commercially recognized description. [footnotes omitted]

In a footnote to the last sentence quoted above the appellate court stated that "we, of course, do not here pass on the scope of the microscope" exclusion contained in Head Note 1(ii) beyond whether that term excludes the subject "Slit–Lamp Microscope." 69 C.C.P.A. at 93, footnote 3, 673 F.2d 380.

It is beyond the power of this court to ignore that specific limitation of the holding. Nor can this court extract a general principle from that case that would take all medical microscopes out of the provision for compound optical microscopes. The ratio decidendi of that case was too closely linked to specific legislative history relating to slit-lamp microscopes to be enlarged in this manner.

Zeiss argues that, although the imported microscopes may have the main characteristics of compound optical microscopes, they are not within the common meaning of that item because they have a distinct commercial identity. To this end Zeiss presents a number of affidavits from experts, all tending to support the proposition that the importations are referred to in commerce by various names that highlight their use in medicine and surgery.

This proposition can be accepted by the court without undermining the fact that

these microscopes are still accurately described for tariff purposes by the term "compound optical microscopes." This line of proof by Zeiss resembles the position once taken by the government in trying to defend its classification of preserved kumquats as "preserved fruits" rather than as the "oranges" which they are by definition. Although the government presented many witnesses attesting to the fact that the commercial meaning of oranges excluded kumquats, the Court of Customs & Patent Appeals noted that none of them could inform the court what the commercial meaning of orange was in a positive sense, nor that such a definition excluded kumquats. It was apparent to the court that a limited commercial meaning of "oranges" had not been proven and the conclusion must be that Congress intended to include all forms of oranges without limitation. *U.S. v. Fung Chong Co.*, 34 C.C.P.A. 40, 44, C.A.D. 342 (1946).

Similarly, there is no proof here that the term "compound optical microscopes" has a commercial meaning that does not include these importations in any context. They may indeed be referred to in the trade by various designations related to their surgical uses but that does not eliminate the descriptive scope of the term "compound optical microscopes."

There is a paucity of legislative history with respect to the tariff treatment of surgical microscopes in the Harmonized System. There is certainly nothing that would suggest a result contrary to that dictated by the plain language of the competing provisions. The only specific fragment of history is the suggestion by the Swiss Administration, during the course of the preparation of the Harmonized Tariff Schedules, that surgical microscopes be included in Heading 9018. That proposal was *not* adopted. See, Doc. 31.256, *Interim Harmonized System Committee,* January 18, 1984 [Defendant's Exhibit G, Exhibit 6]. Plaintiff argues that it was not adopted because it was unnecessary, inasmuch as the intention to include surgical microscopes in Heading 9018 was already clear. But this view in unpersuasive. In the face of a Heading for surgical instruments whose explanatory notes specifically excluded compound optical microscopes, it appears far more likely that this was a failed attempt to remove a type of compound optical microscopes from the exclusion.

Moreover, when Explanatory Note 90.18 is examined closely, it shows that, when it was intended to draw fine distinctions between different types of an excluded item, it was done explicitly. Thus, when photographic cameras were excluded from the coverage of surgical instruments in (h), the note went on to say *"unless* incorporated permanently in the instruments or appliances of this heading." [emphasis in original] Again, the explanatory note contains an extended discussion of the fact that a number of medical or surgical instruments are also tools such as hammers, saws, and pliers, or articles of cutlery such as scissors and knives. It takes special pains to point out that those tools or articles of cutlery would be classified as medical or surgical instruments *only* when their shape, superior quality, material, sterilisability or total packaging clearly identifies them as being for medical/surgical purposes. In the opinion of the Court, it would be reasonable to expect that a similar clarification would have been made if the same distinction had been intended for compound optical microscopes.

The only other related matter in the explanatory notes is the specific mention in Explanatory Note 90.11 that ophthalmic binocular-type microscopes are excluded from the heading for compound optical microscopes and belong in Heading 90.18. This shows an awareness of the specificity needed to take a type of microscope out of the "scope" of the provision for compound optical microscopes. It highlights the absence of such treatment for the microscopes involved in this case.

In the absence of any indication in the legislative history of the Harmonized System or previous Tariff Schedules that distinctions were being made between surgical microscopes and compound optical microscopes, the court has to derive its understanding of the terms from the unambiguous meaning of the language used in the Headings. This plainly supports the government's motion.

For the reasons given above, it is hereby

**ORDERED** that Plaintiff's motion be denied, and it is further

**ORDERED** that Defendant's motion for summary judgment be granted, and it is further

**ORDERED** that this action be, and the same hereby is, dismissed.

### *ORDER*

It is hereby **ORDERED** that Plaintiff's motion be denied, and it is further

**ORDERED** that Defendant's motion for summary judgment be granted, and it is further

**ORDERED** that this action be, and the same hereby is, dismissed.