(1949). Such cases are rare, however, and require the following:

(1) the appealed order must conclusively determine the question;

(2) the order must "resolve an important issue completely separate from the merits of the action"; and,

(3) the order must be effectively unreviewable from a final judgment in the case.

*Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. 2454. This is not such a case. The section 1154(b) issue raised by Caesar— "what evidence is necessary to reopen a claim for service connection under [35 U.S.C.] § 1154(b)"—was obviously not resolved by the remand decision below. Further, what evidence is required to reopen a claim under section 1154(b) is plainly deeply intertwined with Caesar's continuing effort to gain compensation for his wartime injuries. And nothing in the Court of Appeals for Veterans Claims' decision prevents Caesar from presenting his section 1154(b) arguments at some later stage of the dispute, if necessary. Caesar's assertion of the collateral order exception is therefore unavailing.

## CONCLUSION

Because Caesar has not appealed from a final judgment, we lack jurisdiction over the case, and therefore must dismiss his appeal.

### Costs

No costs

DISMISSED

CARL ZEISS, INC., Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 98–1546.

United States Court of Appeals, Federal Circuit.

Nov. 10, 1999.

Mark K. Neville, Jr., International Trade Counsellors, of Westport, Connecticut, argued for plaintiff-appellant.

Barbara M. Epstein, Attorney, Civil Division, Commercial Litigation Branch, In-

ternational Trade Field Office, Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were David W. Ogden, Acting Assistant Attorney General and David M. Cohen, Director, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC. Also on the brief was Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, New York.

Before LOURIE, RADER, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Carl Zeiss, Inc. appeals from the June 23, 1998 decision of the United States Court of International Trade denying its motion for summary judgment and granting the United States' cross-motion for summary judgment that the United States Customs Service correctly classified its imported ZMS 319 product under subheadings 9011.10.40 and 9011.90.00, Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202 (1994) (HTSUS). *See Carl Zeiss, Inc. v. United States,* 16 F.Supp.2d 1097 (Ct. Int'l Trade 1998). Because we conclude that Customs correctly classified the merchandise, we affirm.

## BACKGROUND

In 1994 and 1995, Zeiss imported a product called the ZMS 319 from Germany. The ZMS 319 is comprised of a Zeiss OPMI ® microscope, a stand, and accessories, including a camera—all specially tailored for neurosurgical use. The parties dispute which of the following headings and subheadings constitutes the product's proper classification:

9011   *Compound optical microscopes,* including those for photomicrography, cinemicrography or microprojection; parts and accessories thereof:

9011.10   Stereoscopic microscopes:

9011.10.40   Provided with a means for photographing the image

\*    \*    \*    \*    \*    \*

9011.90.00   Parts and accessories

\*    \*    \*    \*    \*    \*

9018   *Instruments and appliances used in medical, surgical,* dental or veterinary *sciences,* including scintigraphic apparatus, other electro-medical apparatus and sight-testing instruments; parts and accessories thereof:

\*    \*    \*    \*    \*    \*

9018.90   Other instruments and appliances and parts and accessories thereof:

Optical instruments and appliances and parts and accessories thereof:

\*    \*    \*    \*    \*    \*

9018.90.20   Other

HTSUS (1995 ed.) (emphasis added).

Customs classified the ZMS 319 as a stereoscopic compound microscope with a means for photographing the image, parts, and accessories, under subheadings 9011.10.40 and 9011.90.00, and liquidated it at the corresponding general duty rates. *See Zeiss,* 16 F.Supp.2d at 1098. Zeiss timely protested Customs' classification, which protest was denied. Zeiss then challenged Customs' classification in the Court of International Trade, requesting that the court order Customs to reliquidate its ZMS 319 entries under subheading 9018.90.20, duty-free, and to refund the duty that had been assessed. The government responded that Customs had correctly classified the ZMS 319.

Zeiss and the government each cross-moved for summary judgment. The court granted the government's motion and held that Customs correctly classified the ZMS 319 under heading 9011 because that heading described the ZMS 319 more specifically than heading 9018, noting the fact that heading 9011 is an *eo nomine* provision and heading 9018 is a use provi-

sion. *See id.* at 1099–1100. The court rejected Zeiss's argument that under *Nippon Kogaku (USA), Inc. v. United States,* 69 C.C.P.A. 89, 673 F.2d 380 (1982), all microscopes used in medicine must be classified under heading 9018. *See id.* at 1100. The court found that Zeiss had not proved that the term "compound optical microscope" had a commercial meaning distinct from its common meaning, *see id.* at 1100–01, and noted that the Explanatory Notes to the HTSUS [1] supported Customs' classification. *See id.* at 1101.

Zeiss timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

### A. The Standard of Review

■ We review the Court of International Trade's grant of summary judgment in a trade classification case for correctness as a matter of law, deciding *de novo* whether genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *See* U.S.Ct. Int'l Trade R. 56(d); *Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir.1998). Determining the meaning of a tariff term is a question of law. *See Baxter Heathcare Corp. of P.R. v. United States,* 182 F.3d 1333, 1337 (Fed. Cir.1999). We give *Chevron* deference to Customs' interpretations of these terms in its regulations, *see United States v. Haggar Apparel Co.,* 526 U.S. 380, 119 S.Ct. 1392, 1399, 143 L.Ed.2d 480 (1999), but not

to those interpretations in Customs rulings, *see Mead Corp. v. United States,* 185 F.3d 1304, 1307 (Fed.Cir.1999). Determining whether a particular imported item falls within the scope of the various classifications as properly construed is a question of fact. *See Baxter,* 182 F.3d at 1337. In this case, the structure and use of the ZMS 319 are not in dispute, and Customs has not promulgated any regulations interpreting these headings and subheadings. Our analysis concerning whether the ZMS 319 has been properly classified only requires a determination of the proper meaning and scope of the relevant provisions and a determination of the preferred heading for classification purposes, both questions of law.

### B. The Meaning and Scope of the Proposed Headings

■ Zeiss challenges Customs' classification of the subject merchandise under heading 9011, which includes "compound optical microscopes." Zeiss argues that this term commonly refers to compound optical microscopes used for laboratory, industry, and research use, not for medical or surgical use. Zeiss concedes that the ZMS 319's OPMI ® microscope falls within the dictionary definition of a compound optical microscope in that it has multiple stages of magnification (an objective and two eyepieces),[2] but maintains that it is not a compound optical microscope for tariff purposes because it only has surgical uses and has a different "commercial identity."

---

1. *See* Customs Co-operation Council, Harmonized Commodity Description and Coding System: Explanatory Notes (1st ed.1986). The Harmonized Commodity Description and Coding System forms the basis for the HTSUS. It was developed over a 10–year period by the Harmonized System Commodity and Nomenclature Commission of the Customs Cooperation Council, an international organization. The United States participated in the development of the Harmonized System with its major trading partners and agreed to adopt the same language up to the six-digit coding level. Congress passed implementing legislation in the Omnibus Trade and Competitiveness Act of 1988, §§ 1201–

1217. *See* 19 U.S.C. §§ 3001–3011 (1988). The Explanatory Notes were drafted subsequent to the preparation of the Harmonized System nomenclature itself. Although generally indicative of proper interpretation of the various provisions, the Explanatory Notes are not legally binding and are to be consulted for guidance but not treated as dispositive. *See* H.R.Rep. No. 100–576, 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582.

2. Zeiss also concedes that the OPMI ® is technically a "stereoscopic microscope provided with a means for photographing the image" as required by subheading 9011.10.40.

The government responds that the common meaning of the term is the same as its dictionary meaning, which is simply any light microscope with multiple levels of magnification, and that the ZMS 319's use is irrelevant.

■ The HTSUS General Rules of Interpretation (GRI) and the Additional U.S. Rules of Interpretation (U.S. GRI) govern the proper classification of all merchandise and are applied in numerical order. *See Baxter,* 182 F.3d at 1337. Under GRI 1, "[c]lassification is to be determined according to the terms of the headings and any relevant section or chapter notes." Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same. *See Simod Am. Corp. v. United States,* 872 F.2d 1572, 1576 (Fed.Cir.1989). A court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources. *See Baxter,* 182 F.3d at 1337. One who argues that a tariff term should not be given its common or dictionary meaning must prove that it has a different commercial meaning that is definite, uniform, and general throughout the trade. *See Rohm & Haas Co. v. United States,* 727 F.2d 1095, 1097 (Fed.Cir.1984).

We agree with the government that the merchandise is *prima facie* classifiable under the 9011 heading, "compound optical microscopes." Webster's International Dictionary defines an "optical microscope" as "a microscope in which light rays are seen directly by the observer as distinguishable from one ( [such] as an electron microscope) in which some transformation or system of indirect viewing is used." Webster's Third Int'l Dictionary 1584 (1976). It further defines a "compound microscope" as "a microscope consisting of an objective and an eyepiece mounted in a drawtube and focused by means of screw arrangements." *Id.* at 467. *See also* The Random House Unabridged Dictionary 420 (2d ed.1987) ("compound microscope: an optical instrument for forming magnified images of small objects, consisting of an objective lens with a very short focal length and an eyepiece with a longer focal length, both lenses mounted in the same tube"). These definitions indicate the common understanding of those terms and are also consistent with the Explanatory Note to headnote 90.11. *See* Explanatory Note § XVIII 90.11, at 1475 ("[T]he compound optical microscope of this heading has a second stage of magnification for the observation of an already magnified image of the object."). There is no dispute that the ZMS 319 OPMI ® microscope conforms to these definitions.

■ Furthermore, heading 9011 is an *eo nomine* classification provision, not a use provision, as it describes the merchandise by name, not by use. *See Clarendon Marketing, Inc. v. United States,* 144 F.3d 1464, 1467 (Fed.Cir.1998). It would be improper to narrow this provision to include those microscopes used in industry and research, but to exclude those microscopes used in medicine and surgery; a use limitation should not be read into an *eo nomine* provision unless the name itself inherently suggests a type of use. *See Pistorino & Co. v. United States,* 66 C.C.P.A. 95, 599 F.2d 444, 445 (1979); *United States v. Quon Quon Co.,* 46 C.C.P.A. 70, 72–73, 1959 WL 7626 (1959); *F.W. Myers & Co. v. United States,* 24 Ct. Cust. 178, 184–85, (1950). "[A]n *eo nomine* designation, with no terms of limitation, will ordinarily include all forms of the named article." *Hayes–Sammons Chemical Co. v. United States,* 55 C.C.P.A. 69, 75, 1968 WL 9169 (1968). Therefore, the fact that the ZMS 319's exclusive use is surgical is irrelevant to the question whether it falls under the *eo nomine* provision "compound optical microscope."

Lastly, the court found that Zeiss had not proved that the term "compound optical microscope" has a well-known signification in trade and commerce that is different from its common meaning. On appeal, Zeiss only argues that its own product has

a separate "commercial identity." However, the fact that the ZMS 319 is designed, marketed, and used as a surgical instrument does not establish a separate commercial meaning for the HTSUS heading term. *See United States v. Fung Chong Co.*, 34 C.C.P.A. 40, 44, 1946 WL 4434 (1946) (holding that the fact that kumquats were not marketed as oranges did not prove that the term "orange" had a commercial meaning different from its common meaning which included kumquats). Thus, the court properly construed the term "compound optical microscope" in accordance with its common meaning and properly determined that the ZMS 319 fell within heading 9011.

Although we agree with the government that the ZMS 319 is classifiable under heading 9011, we agree with Zeiss that the ZMS 319 is also *prima facie* classifiable under the 9018 heading for instruments used in medical and surgical sciences, for there is no dispute that the ZMS 319 is such an instrument. Having determined that the ZMS 319 is *prima facie* classifiable under both headings 9011 and 9018, we must now determine which is the preferred heading for classification.

## C. *The Preferred Heading for Classification*

■ When a product is *prima facie* classifiable under two or more headings, "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a). Under this rule of "relative specificity," "we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed.Cir.1998).

Zeiss does not argue that heading 9018 has requirements that are more difficult to satisfy than heading 9011. Rather, it argues that heading 9018 is the proper classification because, as a use provision, it prevails over heading 9011, an *eo nomine* provision. Zeiss also argues that the *Nippon Kogaku* case and the Explanatory

Notes to the HTSUS require that all medical microscopes be classified under 9018. The government responds that the use provision does not prevail over the *eo nomine* provision because the description "compound optical microscopes" is narrower and more specific than "instruments used in medical or surgical sciences," Therefore, the government argues, heading 9011 remains the proper classification provision. The government further argues that *Nippon Kogaku* held only that slit-lamp microscopes, not all microscopes used in medicine, are properly classified under 9018 and that the Explanatory Note to heading 9018 reflects this holding.

■ We agree with the government that the ZMS 319 should be classified under heading 9011 because the description "compound optical microscopes" more specifically describes the merchandise than "instruments used in medical or surgical sciences." The term "compound optical microscopes," even while encompassing microscopes with different specifications and uses, suggests specific structural requirements, *viz,* that it be "compound" and "optical." That provision, therefore, is narrower than "instruments and appliances used in medical or surgical sciences," which encompasses a wide variety of non-microscopic merchandise and does not suggest any structural features at all. Furthermore, the general rule that "in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is generally more specifically provided for under the use provision," *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1394 (Fed.Cir.1994), is not obligatory. Rather, this rule provides a "convenient rule of thumb for resolving issues where the competing provisions are in balance." *United States v. Siemens Am., Inc.*, 68 C.C.P.A. 62, 653 F.2d 471, 478 n. 6 (1981) (quoting *United States v. Simon Saw & Steel Co.*, 51 C.C.P.A. 33, 40, 1964 WL 8553 (1964) (internal quotation marks omitted)). Since the competing provisions in this case are not in balance, we do not apply the rule.

*See Totes, Inc. v. United States,* 69 F.3d 495, 500 (Fed.Cir.1995) (declining to apply the "use over *eo nomine* " rule where two competing tariff provisions did not equally describe the merchandise).

We also agree with the government that *Nippon Kogaku* did not hold that all microscopes used in medicine must be classified under 9018. That case dealt with HTSUS's predecessor statute, the Tariff Schedule of the United States (TSUS), and held that slit-lamp microscopes were properly classified as medical instruments (specifically as ophthalmic instruments) under item 709.05 TSUS, rather than as compound optical microscopes. In that case, the court explicitly stated that its holding was limited to the classification of slit-lamp microscopes.[3] Furthermore, the legislative history and the explanatory notes for the TSUS supported that classification. *See Nippon Kogaku,* 673 F.2d at 383–84.

In contrast, the Explanatory Notes to the HTSUS do not support the classification of surgical microscopes under heading 9018. The Explanatory Note to heading 9011 explicitly states that only "ophthalmic binocular type microscopes" are intended to be excluded from heading 9011 and included under 9018. *See* Explanatory Notes § XVII 90.10, at 1477. The Explanatory Note does not speak to other microscopes used in medicine. Furthermore,

the Explanatory Note to heading 9018 states that (1) microscopes of heading 9011 are not covered under heading 9018, and (2) "binocular-type microscopes, consisting of a microscope, an electric lamp with a slit, and a head-rest, the whole being mounted on an adjustable support, for the examination of the eyes" is an ophthalmic instrument falling under heading 9018. *See* Explanatory Notes § XVIII 90.18, at 1488, 1489. Therefore, the Explanatory Notes to headings 9011 and 9018 support the conclusion that only slit-lamp microscopes are to be classified under 9018, not all microscopes used in medicine.

For the reasons stated above, we conclude that Customs properly classified the ZMS 319 under the 9011 Compound Optical Microscopes heading.

### CONCLUSION

We affirm the Court of International Trade's determination that Customs correctly classified the imported ZMS 319 under subheadings 9011.10.40 and 9011.90.00.

### *AFFIRMED*

---

**3.** *See Nippon Kogaku,* 673 F.2d at 383 n. 3 ("We, of course do not here pass on the scope of the 'microscope' exclusion contained in headnote 1(ii) beyond whether that term excludes the subject slit-lamp Microscope.").