# United States Court of Appeals for the Federal Circuit

---

**BENQ AMERICA CORPORATION,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-1259

---

Appeal from the United States Court of International Trade in case No. 05-CV-0637, Judge Delissa A. Ridgway.

---

Decided: May 27, 2011

---

V. JAMES ADDUCI, II, Adduci, Mastriani & Schaumberg, L.L.P., of Washington, DC, argued for plaintiff-appellant. With him on the brief were MUNFORD PAGE HALL, II and WILLIAM C. SJOBERG.

BARBARA S. WILLIAMS, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were TONY WEST, Assistant Attorney General, and JEANNE E. DAVIDSON, Director, of Washington, DC. Of counsel on the brief was BETH BROTMAN,

Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York. Of counsel were MIKKI COTTET and EDWARD F. KENNY, Attorneys, of New York, New York.

WILLIAM D. OUTMAN, II, Baker & McKenzie LLP, of Washington, DC, for amicus curiae Hewlett-Packard Company. With him on the brief were MICHAEL E. MURPHY and KEVIN J. SULLIVAN.

---

Before LINN, SCHALL, and DYK, *Circuit Judges*.

SCHALL, *Circuit Judge*.

BenQ America Corporation ("BenQ") appeals the final decision of the United States Court of International Trade in *BenQ America Corp. v. United States*, 683 F. Supp. 2d 1335 (Ct. Int'l Trade 2010) ("*BenQ*"). In its decision, the court denied BenQ's motion for summary judgment and granted the government's cross-motion for summary judgment. In so doing, the court upheld the ruling of the Bureau of Customs and Border Protection ("Customs") classifying certain liquid crystal display ("LCD") monitors imported by BenQ from China in 2004 under subheading 8528.21.70 of the Harmonized Tariff Schedule of the United States ("HTSUS"). BenQ had protested the classification, arguing that the monitors should be classified under subheading 8471.60.45 of the HTSUS. Because we conclude that the Court of International Trade erred in not conducting a principal use analysis with respect to the imported goods, we vacate the grant of summary judgment in favor of the government and remand the case to the court for further proceedings consistent with this opinion.

BACKGROUND

I.

The products at issue are flat-panel LCD monitors with screens measuring 20.1 inches on the diagonal. The monitors are equipped with five different types of connectors for receiving data: (1) a 15-pin D-sub analog video connector; (2) a DVI-D digital video connector; (3) an S-video connector; (4) a composite connector; and (5) USB ports. The D-sub analog video and DVI-D digital video connectors can receive signals from a personal computer, whereas the S-video and composite connectors can receive video signals from devices such as DVD players and VCRs. The USB ports allow the monitors to be connected to digital cameras and other devices. The monitors are imported with a stand for use on a desktop but can also be mounted on a wall. BenQ imported the monitors, Dell™ 2001FP Flat Panel Color Monitors, for BenQ Corporation, a Taiwanese company that manufactured the monitors for Dell™.

Upon importation, BenQ entered the monitors under HTSUS heading 8471, subheading 8471.60.45, both of which are part of Section XVI of the HTSUS. Subheading 8471.60.45 is a duty-free provision for:

> Automatic data processing machines and units thereof; magnetic or optical readers, machines for transcribing data onto data media in coded form and machines for processing such data, not elsewhere specified or included: Input or output units, whether or not containing storage units in the same housing: Other: Display units: Other: Other.[1]

---

[1]    Unless otherwise noted, all references to the HTSUS are to the 2004 HTSUS.

In due course, Customs classified and reliquidated the monitors under HTSUS heading 8528, subheading 8528.21.70, dutiable at 5% ad valorem, and assessed duties on the monitors at that rate. Heading 8528 and subheading 8528.21.70 also are part of HTSUS Section XVI. Subheading 8528.21.70 provides for:

> Reception apparatus for television, whether or not incorporating radiobroadcast receivers or sound or video recording or reproducing apparatus; video monitors and video projectors: Video monitors: Color: With a flat panel screen: Other: Other. [2]

BenQ filed a timely protest of Customs' reclassification, arguing that the monitors are of a kind solely or principally used in an automatic data processing ("ADP") system and thus classifiable under subheading 8471.60.45 pursuant to Notes 5(B) and (C) of Chapter 84 of the HTSUS. After Customs failed to take action on the protest, the protest was deemed denied.

## II.

BenQ filed suit in the Court of International Trade under 28 U.S.C. § 1581(a) to contest the denial of its protest. After designating the action a test case to control the outcome of at least one other action, the court entertained the parties' respective motions for summary judg-

---

[2] As of 2007, HTSUS heading 8528 was amended to cover all monitors "[o]f a kind solely or principally used in an automatic data processing system of heading 8471." *See* subheading 8528.41.00, HTSUS (2007) (covering " . . . Cathode-ray tube monitors: Of a kind solely or principally used in an automatic data processing system of heading 8471"); subheading 8528.51.00, HTSUS (2007) (covering " . . . Other monitors: Of a kind solely or principally used in an automatic data processing system of heading 8471"); *see also BenQ*, 683 F. Supp. 2d at 1347 n.22.

ment.  In its motion, BenQ argued that the court should apply a principal function analysis under Note 3 to HTSUS Section XVI.  Note 3 provides that, "[u]nless the context otherwise requires, composite machines consisting of two or more machines fitted together to form a whole and other machines designed for the purpose of performing two or more complementary or alternative functions are to be classified as if consisting only of that component or as being that machine which performs the principal function."  According to BenQ, the principal function of the Dell™ monitors is to serve as a monitor for a computer or an automatic data processing machine.  Hence, they should be classified under HTSUS subheading 8471.60.45, as BenQ claimed at the time of importation.

For its part, the government urged that, in order for the Dell™ monitors to be classified in heading 8471, BenQ must satisfy the criteria of Note 5(B) to Chapter 84, which requires a principal use analysis pursuant to HTSUS Additional U.S. Rule of Interpretation ("ARI") 1(a).  Chapter 84, Note 5(B)(a) states that a unit can be classified under heading 8471 if it is "of a kind solely or principally used in an automatic data processing system."  ARI 1(a) states in relevant part that, "[i]n the absence of special language or context which otherwise requires — (a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use."  Such an analysis, the government contended, compelled the conclusion that the Dell™ monitors could not be classified under HTSUS subheading 8471 because BenQ did not present evidence regarding the class or kind of goods to which the monitors belong.  The government also pointed to an Explanatory Note to head-

ing 8471 limiting "Display units of automatic data processing machines" to those machines that are "capable of accepting a signal only from the central processing unit of an automatic data processing machine . . . ." World Customs Org., Harmonized Commodity Description & Coding System, Explanatory Notes ("Explanatory Notes") 1579 (2002). In the government's view, the Explanatory Note provided additional support for its position that the monitors should not be classified under heading 8471 because the Dell™ monitors accept signals from sources other than automatic data processing machines. According to the government, the monitors were properly classified in heading 8528, a provision encompassing video monitors.

The Court of International Trade granted the government's motion and denied BenQ's motion, holding that Customs had properly classified the monitors under HTSUS heading 8528. *BenQ*, 683 F. Supp. 2d at 1347-48. The court, however, followed an approach somewhat different from that urged by either BenQ or the government. Instead of employing either a principal use or principal function analysis, the court relied on Note 5(E) to Chapter 84, HTSUS, and the Explanatory Notes to heading 8471. The court determined that the Dell™ monitors can perform a specific function other than data processing, that function being serving as a video monitor for a video source. *Id.* at 1345. This ability, the court concluded, meant that the monitors could not be classified under heading 8471 because Note 5(E) provides that "[m]achines performing a specific function other than data processing and incorporating or working in conjunction with an automatic data processing machine are to be classified in the headings appropriate to their respective

functions or, failing that, in residual headings."[3]   Note
5(E) to Chapter 84, HTSUS.  Since the Dell™ monitors
are admittedly capable of connection to a video source for
use as video monitors, the court reasoned that they can
"perform[ ] a specific function other than data processing"
and thus had to be classified, not under heading 8471, but
under "the heading[ ] appropriate to their respective
function[ ] . . . ."  *BenQ*, 683 F. Supp. 2d at 1345-46 (quot-
ing Note 5(E) to Chapter 84, HTSUS).  That heading,
according to the court, was the broad *eo nomine* heading
8528 ("Reception apparatus for television, whether or not
incorporating radiobroadcast receivers or sound or video
recording or reproducing apparatus; video monitors and
video projectors") because the monitors are video moni-
tors.  Thus, the court upheld Customs' classification of the
monitors under subheading 8528.21.70.  The court re-
jected BenQ's reliance on Note 3 to Section XVI on the
ground that the Note includes the express proviso that it
applies "[u]nless the context otherwise requires."  *Id.* at
1341-42.  The terms of heading 8471 and the relevant
Chapter Notes, the court found, "plainly constitute a
'context [which] otherwise requires,'" overriding the
general default rule in Note 3 to Section XVI. *Id.* at 1342.

BenQ timely appealed the decision of the Court of In-
ternational Trade.  We have jurisdiction pursuant to 28
U.S.C. § 1295(a)(5).

---

[3]   The court also agreed with the government that
the Explanatory Notes to heading 8471 confirm that the
Dell™ monitors could not be classified under that heading
because the monitors accept signals from video sources.
*See BenQ*, 683 F. Supp. 2d at 1346-47.

DISCUSSION

I.

Whether particular imported merchandise has been classified under an appropriate tariff provision generally entails a two-step process: (1) ascertaining the proper meaning of specific terms within the tariff provision, and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. *Intel Singapore, Ltd. v. United States*, 83 F.3d 1416, 1417-18 (Fed. Cir. 1996). The first step is a question of law that is reviewed de novo; the second is a question of fact that is reviewed for clear error. *Id.* The issue in this case presents a question of law: specifically, whether, in determining the HTSUS subheading under which the Dell™ monitors should be classified, the Court of International Trade improperly relied upon certain provisions of the HTSUS.

The General Rules of Interpretation ("GRIs") and the ARIs govern classification of merchandise under the HTSUS, and are applied in numerical order. *N. Am. Processing Co. v. United States,* 236 F.3d 695, 698 (Fed. Cir. 2001). When determining the correct classification for merchandise, a court first construes the language of the headings in question, in light of any related section or chapter notes. *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1372 (Fed. Cir. 2009) (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998)).

"The terms of the HTSUS are construed according to their common commercial meanings." *Millenium Lumber Distribution Ltd. v. United States,* 558 F.3d 1326, 1329 (Fed. Cir. 2009). "According to the [HTSUS's] [p]reface, '[t]he legal text of the [HTSUS] includes all provisions enacted by Congress,' including 'Section and Chapter notes.'" *Honda of Am. Mfg., Inc. v. United States*, 607

F.3d 771, 773 (Fed. Cir. 2010). The Section and Chapter Notes "are not optional interpretive rules, but are statutory law." *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003). Unlike the Section and Chapter notes, the Explanatory Notes are not legally binding or dispositive, but they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions. *Id.* at 929 n.3; *N. Am. Processing Co.,* 236 F.3d at 698 (citing *Carl Zeiss Inc. v. United States*, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999)).

## II.

BenQ's first argument on appeal is one that the government does not dispute: that the trial court erred in relying on Note 5(E) to Chapter 84, HTSUS, to exclude the monitors from heading 8471. According to BenQ, Note 5(E) applies only in two distinct situations: (1) in the case of a machine incorporating an ADP machine and performing a specific function other than data processing; or (2) in the case of a machine presented with an ADP machine and intended to work in conjunction with the ADP to perform a specific function other than data processing, as set forth in the Explanatory Note to Chapter 84, Note 5.[4] At the time of importation BenQ's monitors

---

[4]    The Explanatory Note to Chapter 84, Note 5(E) states:

In accordance with the provisions of Note 5(E) to Chapter 84, the following classification principles should be applied in the case of a machine incorporating or working in conjunction with an automatic data processing machine, and performing a specific function:

(1)    A machine incorporating an automatic data processing machine and performing a specific function other than data processing is classifiable in

did not incorporate an ADP machine, did not work in conjunction with an ADP to perform a function other than data processing, and were not presented with an ADP machine. Therefore, BenQ argues and the government agrees, the court's reliance on Chapter 84, Note 5(E), was in error.

The government also concedes BenQ's second argument: that the Court of International Trade erroneously relied on the first clause of an Explanatory Note to heading 8471 to exclude BenQ's monitors from that heading. BenQ argues that the first clause of the non-binding Explanatory Note to heading 8471, which requires that a display unit of an ADP be capable of accepting a signal "only from the central processing unit of an [ADP],"[5]

the heading corresponding to the function of that machine or, in the absence of a specific heading, in a residual heading, and not in heading 84.71.

(2) Machines presented with an automatic data processing machine and intended to work in conjunction therewith to perform a specific function other than data processing, are to be classified as follows:

the automatic data processing machine must be classified separately in heading 84.71 and the other machines in the heading corresponding to the function which they perform unless, by application of Note 4 to Section XVI or Note 3 to Chapter 90, the whole is classified in another heading of Chapter 84, Chapter 85 or of Chapter 90.

Explanatory Notes 1395 (2004).

[5] The Explanatory Notes to heading 8471 state:

Among the constituent units included [under heading 8471] are display units of automatic data processing machines which provide a graphical presentation of the data processed. They differ from the video moni-

conflicts with the statutory language of Note 5(B)(a) to Chapter 84, which states that a unit can be classified under heading 8471 if, amongst other things, it is "of a kind solely *or principally* used in an automatic data processing system." Chapter 84, Note 5(B)(a) (emphasis added). *See* Appellee's Br. 29 n.9 ("To the extent that the Explanatory Notes to Heading 8471 (2002) at 1579 support the trial court's reading of Note 5(E), we believe that the Explanatory Notes may conflict with Note 5(B) and, accordingly, do not govern here.").

BenQ's principal argument is that the Court of International Trade should have determined, and that we should now determine, the "principal function" of the Dell™ monitors, as required by Section XVI, Note 3, HTSUS. BenQ urges that the monitors' "principal function" is serving "as an output (display) unit of an ADP system," and that the monitors thus should be classified in heading 8471 as "units" of ADPs. Appellant's Br. 44. BenQ argues that Section XVI, Note 3, prevails over Chapter 84, Note 5(B)(a), and the "principal use" analysis under ARI 1(a), because the Chapter Note relates to only one of the competing headings, whereas both Chapter 84 and Chapter 85 fall within Section XVI. BenQ also argues that ARI 1 applies "[i]n the absence of special language or context which otherwise requires" and that Section XVI, Note 3 provides such "special language or context." BenQ requests that we perform a principal function analysis through an application of the factors set

---

tors and television receivers of heading 85.28 in several ways, including the following:

(1)    Display units of automatic data processing machines are capable of accepting a signal only from the central processing unit of an automatic data processing machine . . . .

Explanatory Notes 1579 (2002).

forth in *United States v. Carborundum Co.*, 536 F.2d 373, 377 (C.C.P.A. 1976), even though those factors are typically used to establish whether merchandise falls within a particular class or kind for purposes of a principal use analysis. In the alternative, BenQ argues that we should remand the case to the Court of International Trade for it to perform a principal function analysis.

The government responds that we should affirm the Court of International Trade's decision for several alternative reasons. First, the government points out that BenQ has admitted that the monitors are "capable of connection to a video source as video monitors." *BenQ*, 683 F. Supp. 2d at 1341. Thus, the government contends, the monitors fall squarely under heading 8528, which is a broad *eo nomine* provision covering, inter alia, "video monitors."

Next, the government argues that BenQ has not established that the monitors should be classified in heading 8471, which is directed to "Automatic data processing machines and units thereof." BenQ, the government observes, does not argue that the monitors are ADP machines, but instead that they are "units thereof." As noted above, Chapter 84, Note 5(B), provides statutory requirements for "units" of ADP systems, requiring at Note 5(B)(a) that such units be "of a kind solely or principally used in" an ADP system. The government argues, and BenQ does not dispute, that Chapter 84, Note 5(B), invokes a principal use analysis under ARI 1(a). *See Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1363-64 (Fed. Cir. 1999); *Grp. Italglass U.S.A., Inc. v. United States*, 17 Ct. Int'l Trade 226, 228 (1993), *reconsideration granted in part by* 17 Ct. Int'l Trade 373 (1993).[6] Thus,

---

[6] The government also argues that Note 5(B)(a) invokes the concept of "actual use" under ARI 1(b) and 19

the government argues that, pursuant to ARI 1(a), BenQ was required to establish (1) the class or kind to which the imported goods belong, and (2) the principal use of that class or kind at or immediately prior to the date of importation. According to the government, BenQ did not carry this burden because it failed to define the class of goods encompassed by heading 8471 and failed to produce evidence regarding the class or kind of goods to which the imported multimedia monitors belong. The government argues that the trial court correctly found Note 3 of Section XVI inapplicable and that BenQ is impermissibly seeking to use this Note to extend heading 8471 beyond its statutory terms by rendering it an "actual use" provision in direct contravention of the principal use statutory requirements for classification as a "unit" provided in Chapter 84, Note 5(B). Accordingly, the government states that the trial court's classification of BenQ's monitors as video monitors under heading 8528 should be affirmed.

## III.

Chapter 84, Note 5(B), lists three features which, if present, indicate that, pursuant to Note 5(C), a "unit is to be regarded as being a part of a complete [ADP] system" under heading 8471. Notes 5(B) and (C) to Chapter 84 of the HTSUS (2004) state:

> 5. (B) Automatic data processing machines may be in the form of systems consisting of a variable number of separate units. Subject to paragraph (E) below, a unit is to be

C.F.R. §§ 10.131-10.139, HTSUS, but that BenQ did not satisfy any of the statutory or regulatory requirements for classification of the monitors based on "actual use." BenQ does not appear to dispute this contention.

regarded as being a part of a complete system if it meets all the following conditions:

    (a)    It is of a kind solely or principally used in an automatic data processing system;

    (b)    It is connectable to the central processing unit either directly or through one or more other units; and

    (c)    It is able to accept or deliver data in a form (codes or signals) which can be used by the system.

    (C)    Separately presented units of an automatic data processing machine are to be classified in heading 8471.

As already seen, Note 5(E), which is referenced in Note 5(B), states:

    5.    (E)    Machines performing a specific function other than data processing and incorporating or working in conjunction with an automatic data processing machine are to be classified in the headings appropriate to their respective functions or, failing that, in residual headings.

As noted above, the Court of International Trade did not perform an analysis under Chapter 84, Note 5(B), because the court concluded that Note 5(E) and the Explanatory Note to heading 8471 prohibited classification

in heading 8471. *BenQ*, 683 F. Supp. 2d at 1343-47. The parties take the position that the court's reliance on Note 5(E) and the relevant Explanatory Note was erroneous, and we agree. Note 5(E) is limited to "[m]achines performing a specific function other than data processing and incorporating or working in conjunction with an automatic data processing machine." The Dell™ monitors do not incorporate ADP machines, but rather are separate and distinct units. Additionally, the government does not appear to dispute that when "performing a specific function other than data processing," such as when the monitors are serving as video monitors for other devices such as DVD players and VCRs, the monitors are "working in conjunction" with those other devices, not with an automatic data processing machine.[7] Further, to the extent that the Explanatory Note to heading 8471 prohibits classification in heading 8471 for those machines that are not "capable of accepting a signal *only* from the central processing unit of an automatic data processing machine," it contradicts the express statutory language of Note 5(B)(a), which specifically provides for units that are merely "principally," as opposed to "solely," used in automatic data processing systems. Explanatory Notes 1579 (2002) (emphasis added); Chapter 84, Note 5(B)(a). Although the Court of International Trade relied on Note 5(E) in error, the remaining statutory requirements of Chapter 84, Note 5, must be met in order for the monitors to be classified under heading 8471. Thus, to determine if the Dell™ monitors can be classified under heading 8471 as BenQ argues, an analysis under Chapter 84 Note 5(B) must be undertaken.

---

[7]    In addition, we note that the government does not dispute that the Dell™ monitors are not "presented with" (i.e., imported with) automatic data processing machines. *See* Explanatory Notes 1395 (2004).

IV.

It is undisputed that the requirements of paragraphs (b) and (c) of Note 5(B) are met in the Dell™ monitors. The question thus becomes whether the requirement of paragraph (a) ("of a kind solely or principally used in an automatic data processing system") also is met. BenQ does not argue that the monitors are "solely" used in ADP systems. A determination of whether this requirement is met therefore requires an analysis of the "principal use" of the monitors unless, as BenQ argues, the "principal function" analysis of Section XVI, Note 3, overrides the "principal use" analysis of Note 5(B)(a).

As previously noted, ARI 1(a) states that "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use." The rule "call[s] for a determination as to the group of goods that are commercially fungible with the imported goods." *Primal Lite*, 182 F.3d at 1365. One method of determining the "class or kind" is by applying the factors set forth in *Carborundum*. These factors are the general physical characteristics of the merchandise; the expectation of the ultimate purchasers; the channels, class or kind of trade in which the merchandise moves; the environment of the sale of the merchandise; the use of the goods at issue, if any, in the same manner as merchandise which defines the class; the economic practicality of so using the import; and the recognition in the trade of this use ("the *Carborundum* factors"). *See* 536 F.2d at 377.

Even though both heading 8471 and heading 8528 fall within Section XVI, Chapter 84, Note 5(B), is specifically directed to heading 8471. Section XVI, Note 3, is a Note

of general application which, in certain circumstances, calls for a principal function analysis. It is highly unlikely that the drafters intended to override the specifically tailored Note 5(B), which sets forth the statutory requirements for heading 8471, with Section XVI, Note 3's general analysis. This is particularly the case, we think, because Section XVI, Note 3, includes a proviso indicating that it does not apply when "the context otherwise requires." Here, we think that, by reason of the language of Note 5(B), "the context otherwise requires." Moreover, the purpose of "principal use" provisions in the HTSUS is to classify particular merchandise according to the ordinary use of such merchandise, even though particular imported goods may be put to some atypical use. *Primal Lite*, 182 F.3d at 1364. Although, as seen, the parties disagree about whether a Section XVI, Note 3, principal function analysis or a Note 5(B) principal use analysis should be performed, they do not appear to argue that the Dell™ monitors are put to *atypical* use after importation, so that the two analyses could possibly produce different outcomes in this case.[8] In fact, BenQ admits that Customs "has traditionally used [the *Carborundum*] factors to classify multifunction monitors," Appellant's Br. 44, and proposes that we consider these factors in performing a principal function analysis. It is unclear whether a principal use analysis would require a different result in this case than a principal function analysis. In any event, we conclude that a principal use analysis is the correct approach in this case.

---

[8]  This is not the case where, for example, we must consider whether a classification covering vehicles principally used for automobile racing would cover a race car, even if the particular imported car was actually used solely in an advertising display. *See Primal Lite*, 182 F.3d at 1364.

The government argues that remand is not necessary because BenQ failed to provide any evidence regarding principal use, instead limiting its proof to a principal function analysis focused upon the use of the monitors themselves as opposed to their "class or kind." We note that the government challenged the adequacy of BenQ's showing at the trial court as it related to principal function, but the Court of International Trade expressly did not reach the issue of the adequacy of the evidence for either a principal use or principal function analysis because of its rationale for disposing of the case. *BenQ*, 683 F. Supp. 2d at 1343-44 n.15. Because the Court of International Trade did not reach this issue, we decline to address it on appeal. On remand the Court of International Trade should conduct a principal use analysis to determine the correct classification of the Dell™ monitors.

CONCLUSION

For the foregoing reasons, we vacate the judgment of the Court of International Trade classifying BenQ's monitors under subheading 8528.21.70. The case is remanded to the Court of International Trade for further proceedings consistent with this opinion.

**VACATED and REMANDED**

COSTS

Each party shall bear its own costs.