# United States Court of Appeals for the Federal Circuit

---

**LINK SNACKS, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1319

---

Appeal from the United States Court of International Trade in Nos. 09-CV-0304 and 09-CV-0464, Judge Leo M. Gordon.

---

Decided: February 3, 2014

---

GREGORY G. GARRE, Latham & Watkins LLP, of Washington, DC, argued for plaintiff-appellant. On the brief were LIZBETH R. LEVINSON and RONALD M. WISLA, Kutak Rock, LLP, of Washington, DC.

ALEXANDER VANDERWEIDE, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, of Washington, DC, and BARBARA

S. WILLIAMS, Attorney in Charge, International Trade Field Office, of New York, New York.

_____

Before NEWMAN, LOURIE, and BRYSON, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Link Snacks, Inc. ("LSI") appeals from the summary judgment decision of the United States Court of International Trade affirming Customs' decision classifying LSI's beef jerky products as "[c]ured or pickled" bovine meat products under subheading 1602.50.09 of the Harmonized Tariff Schedule of the United States ("HTSUS"). *Link Snacks, Inc. v. United States*, 901 F. Supp. 2d 1369 (Ct. Int'l Trade 2013). Because the imported articles are described *eo nomine* by HTSUS Heading 1602.50.09 and the court did not err in granting summary judgment as a matter of law, we affirm.

## BACKGROUND

LSI imported beef jerky products from New Zealand and Brazil consisting of sliced, cooked, cured, and dried meat seasoned with salt and other spices and flavors. The manufacturing process for the imported jerky involves, *inter alia*, curing the sliced boneless beef in a mixture of seasoning, sodium nitrate, and water for 24 to 48 hours, after which the meat is cooked and smoked for three to six hours. *Id.* at 1371–72. Once placed in airtight bags, the product has a shelf life of 18–20 months.

United States Customs and Border Protection ("Customs") classified the subject beef jerky under HTSUS subheading 1602.50.09 as "cured" prepared or preserved beef and denied LSI's protests to classify it under subheading 1602.50.2040 as "other" prepared or preserved beef. *Id.* at 1371. LSI then filed suit in the Court of International Trade. After discovery, both parties then moved for summary judgment.

The Court of International Trade denied LSI's motion for summary judgment and granted the government's cross-motion for summary judgment. *Id.* at 1375. The court analyzed each party's proposed subheading pursuant to Rule 1 of the General Rules of Interpretation ("GRIs") by consulting expert statements and relevant materials to determine the common meaning of the term "cured." *Id.* at 1373–74. The court considered LSI's arguments that beef jerky is a product defined more by its dehydrated properties than by the curing process, but instead found that subheading 1602.50.09 was an *eo nomine* provision because it "'includ[ed] all forms of the named article', even improved forms." *Id.* at 1375 (quoting *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999)). The court thus affirmed Customs's classification, concluding that although LSI's jerky product may also be affected by the preservative process of dehydration, it nevertheless remained "cured" within the meaning of 1602.50.09. *Id.* at 1375.

LSI timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the Court of International Trade's grant of summary judgment without deference, *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011), and "decide *de novo* the proper interpretation of the tariff provisions as well as whether there are genuine issues of fact to preclude summary judgment," *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). Although we accord deference to a classification ruling by Customs to the extent of its "power to persuade," *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001), we have "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms," *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005). We thus review the

interpretation of the governing statutory provisions without deference to the trial court's decision. *Lynteq, Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992).

LSI argues that its beef jerky products are properly categorized under 1602.50.2040 as "other" prepared or preserved beef. It argues that the drying process changes the beef jerky into a different product from conventional cured meat products, such as packaged ham and roast beef. For support, LSI points to differences in the way the United States Department of Agriculture ("USDA") classifies meat products depending on the moisture content. Additionally, LSI argues that under GRI 3(b), beef jerky is properly classified as "other."

The government maintains, and the Court of International Trade so held, that the subject beef jerky is categorized under subheading 1602.50.09 because it is described *eo nomine* under that heading as cured beef. The government contends that another agency's non-tariff regulations do not control the Customs categorization. The government also responds that no analysis beyond GRI 1 is required because the imported merchandise is not classifiable under two or more subheadings.

We agree with the government and the Court of International Trade that the proper classification is under subheading 1602.50.09. Merchandise imported into the United States is classified under the HTSUS. The HTSUS scheme is organized by headings, each of which has one or more subheadings. The headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category.

The classification of merchandise under the HTSUS is governed by the principles set forth in the GRIs and the Additional U.S. Rules of Interpretation. *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The GRIs are applied in numerical order and

a court may only turn to subsequent GRIs if the proper classification of the imported goods cannot be accomplished by reference to a preceding GRI. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999); *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). GRI 1 provides that "for legal purposes, classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the [remaining GRIs.]" GRI 1.

The proper classification of merchandise under the HTSUS is a two-step process. *Orlando Food*, 140 F.3d at 1439. First, we ascertain the meaning of the specific terms in the tariff provision, which is a question of law that we review without deference. *Id.* HTSUS terms are construed in accordance with their common and commercial meaning, which are presumed to be the same. *Carl Zeiss*, 195 F.3d at 1379. Second, we determine whether the goods come within the description of those terms, which is a factual inquiry that we review for clear error. *Orlando Food*, 140 F.3d at 1439. However, when there is no dispute as to the nature of the merchandise, then the two-step classification analysis "collapses entirely into a question of law." *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006).

The relevant section of the HTSUS reads as follows:

1602    Other prepared or preserved meat, meat offal or blood:

1602.50    Of bovine animals

   Not containing cereals or vegetables:

1602.50.09    Cured or pickled

   Other:

      In airtight containers:

. . .

1602.50.2040              Other

HTSUS (2006).

The identity of the imported articles here is not in dispute; they are marked and sold as beef jerky products. The parties agree that the subject beef jerky is classified under subheading 1602.50 as "prepared or preserved meat, meat offal or blood: Of bovine animals." The only issue in this case is whether the subject beef jerky should be classified as "cured" or "other" prepared beef products. Accordingly, there are no genuine issues of fact precluding summary judgment.

The trade court was correct that no analysis beyond GRI 1 is necessary. The subject beef jerky is described, *eo nomine*, by HTSUS 1602.50.09 as cured beef products. HTSUS 1602.50.09 does not draw distinctions based on whether or not the meat is dehydrated; the only inquiry is whether or not the meat has been cured. It is undisputed that LSI's beef jerky products are cured for a period of 24 to 48 hours. Although there is a respectable argument that the further step of dehydration affects the beef jerky product beyond the curing process, it does not overcome the simple and straightforward classification of the subject merchandise as cured beef products.

LSI's reliance on USDA's differing treatment of dehydrated meat products to support its conclusion that the subject beef jerky should be classified by HTSUS 1602.50.2040 is misplaced because, although they may be helpful, non-tariff regulations by other agencies are not dispositive for purposes of tariff classification. *North Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001); *Marubeni Am. Corp. v. United States*, 35 F.3d 530, 537 (Fed. Cir. 1994).

Nor do this court's opinions in *Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361 (Fed. Cir. 2011), and

*CamelBak* support LSI's argument. In *Arko,* the court upheld a decision of the Court of International Trade that mellorine, although containing milk, was not an "article of milk" because it contained substantial amounts of other ingredients, and in *CamelBak*, the court held that bags designed to carry cargo and provide a method for hands-free hydration were not classifiable as "backpacks" because the hydration feature provided the bags "with a unique identity and use that remove[d] them from the scope of the *eo nomine* backpack provision." 649 F.3d at 1369. In this case, none of the other steps in the process of making LSI's beef into jerky alters the fact that LSI's beef jerky is "cured."

Finally, because we conclude that the merchandise at issue is properly classifiable under GRI 1, resorting to an analysis under GRI 3(b) is unnecessary. *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1334 (Fed. Cir. 2005). As indicated, the subject beef jerky is not classifiable under GRI 3(b) because under GRI 1, the merchandise is *prima facie* classifiable by HTSUS 1602.50.09 as cured beef products, and the GRIs are applied in numerical order. *Carl Zeiss*, 195 F.3d at 1379.

CONCLUSION

For the foregoing reasons, we conclude that the Court of International Trade did not err in granting summary judgment in favor of the government as a matter of law because the imported articles are provided for *eo nomine* as cured prepared or preserved beef products in HTSUS subheading 1602.50.09. Accordingly, the judgment of the Court of International Trade is

**AFFIRMED**