# United States Court of Appeals for the Federal Circuit

---

**GRK CANADA, LTD.,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---

2013-1255

---

Appeal from the United States Court of International Trade in No. 09-CV-0390, Senior Judge Judith M. Barzilay.

---

## ON PETITION FOR REHEARING EN BANC

---

CRAIG E. ZIEGLER, Montgomery, McCracken, Walker & Rhoads, LLP, of Philadelphia, Pennsylvania, filed a petition for rehearing en banc for plaintiff-appellee.

JASON M. KENNER, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, filed a response for defendant-appellant. With him on the response were JOYCE R. BRANDA, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and AMY M. RUBIN, Assistant Director. Of counsel on the response was BETH C. BROTMAN, Office of the Assis-

tant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, of New York, New York.

---

Before PROST, *Chief Judge*, NEWMAN, LOURIE, CLEVENGER,[1] DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, and CHEN, *Circuit Judges.*[2]

NEWMAN, *Circuit Judge*, dissents from the denial of the petition for rehearing en banc without opinion.

REYNA, *Circuit Judge*, with whom WALLACH, Circuit Judge, joins, dissents from the denial of the petition for rehearing en banc.

WALLACH, *Circuit Judge*, with whom REYNA, *Circuit Judge*, joins, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

# O R D E R

A petition for rehearing en banc was filed by plaintiff-appellee GRK Canada, Ltd., and a response thereto was invited by the court and filed by defendant-appellant United States. The petition was first referred as a petition for rehearing to the panel that heard the appeal, and thereafter, the petition for rehearing en banc was referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1)  The petition for panel rehearing is denied.

(2)  The petition for rehearing en banc is denied.

(3) The mandate of the court will issue on December 15, 2014.

FOR THE COURT

December 8, 2014                    /s/ Daniel E. O'Toole
        Date                        Daniel E. O'Toole
                                    Clerk of Court

---

[1]    Circuit Judge Clevenger participated only in the decision on the petition for panel rehearing.

[2]    Circuit Judge Hughes did not participate.

# United States Court of Appeals
# for the Federal Circuit

---

**GRK CANADA, LTD.,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

---

2013-1255

---

Appeal from the United States Court of International Trade in No. 09-CV-0390, Senior Judge Judith M. Barzilay.

---

REYNA, *Circuit Judge*, with whom WALLACH, *Circuit Judge*, joins, dissenting from the denial of the petition for rehearing en banc.

For the reasons set forth in *GRK Canada, LTD. v. U.S.*, 761 F.3d 1354, 1361–66 (Fed. Cir. 2014) (Reyna, J., dissenting), I respectfully *dissent* from this Court's denial of the petition for rehearing en banc.

# United States Court of Appeals for the Federal Circuit

---

**GRK CANADA, LTD.**,
*Plaintiff-Appellee,*

**v.**

**UNITED STATES**,
*Defendant-Appellant.*

---

2013-1255

---

Appeal from the United States Court of International Trade in No. 09-CV-00390, Senior Judge Judith M. Barzilay.

---

WALLACH, *Circuit Judge*, with whom REYNA, *Circuit Judge*, joins, dissenting from the denial of the petition for rehearing *en banc*.

This court has consistently analyzed the headings of the Harmonized Tariff Schedule of the United States ("HTSUS") by first determining whether the heading is defined by name or by use, and then applying the corresponding classification analysis. This analysis is required not only by our case law, but by the HTSUS itself, a statutory enactment that contains contrasting interpretative frameworks for each type of heading. Indeed, classification is governed by the General Rules of Interpretation ("GRI") and the Additional United States Rules of Interpretation ("ARI"), which are part of the

HTSUS statute. *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011).

The majority opinion in *GRK Canada, Ltd. v. United States* (*GRK II*), 761 F.3d 1354 (Fed. Cir. 2014), impermissibly departs from this required framework by incorporating elements of a use analysis into its analysis of an eo nomine heading without providing a justification why an exception should be made in this case. In doing so, the majority opinion creates a conflict within our classification cases and confuses what should be a pronounced distinction between eo nomine and use headings. For these reasons, this case should be reconsidered en banc. I respectfully dissent from this court's contrary ruling.

I.

The two distinct types of headings in the HTSUS, eo nomine and use provisions, require different analyses. *Compare Kahrs Int'l, Inc. v. United States*, 713 F.3d 640 (Fed. Cir. 2013) (eo nomine analysis), *with Aromont USA, Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012) (principle use analysis). This court "consider[s] a HTSUS heading or subheading an *eo nomine* provision when it describes an article by a specific name." *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011); *see also* Black's Law Dictionary 265 (9th ed. 2009) (The term "eo nomine" means "by or in that name.").

In an eo nomine analysis, the court first construes the headings at issue as a matter of law by enumerating and defining each named element of the headings; the court then moves to the second classification step, a factual inquiry, to determine whether the subject merchandise fulfills each element of a properly-construed heading. *See, e.g., R.T. Foods, Inc. v. United States*, 757 F.3d 1349 (Fed. Cir. 2014); *Link Snacks, Inc. v. United States*, 742 F.3d 962 (Fed. Cir. 2014). By contrast, the ARIs govern classification of imported merchandise under use headings. In

a use analysis, the court first construes the headings at issue by defining the uses of the goods described by the heading as directed by ARI 1(a) for principal use headings or by ARI 1(b) for actual use headings. For principal use headings, the court then determines the principal use of the subject merchandise by analyzing the goods using the so-called *Carborundum* factors to determine whether they fall within one of the headings. *See, e.g.*, *Aromont*, 671 F.3d at 1313–14 (citing *United States v. Carborundum Co.*, 536 F.2d 373, 377 (CCPA 1976)).

Mindful of these distinctions, consideration of use in an eo nomine analysis *is an exception*, and, indeed, a very limited one. *See Kahrs*, 713 F.3d at 646 (Fed. Cir. 2013) ("[W]e *should not read a use limitation* into an eo nomine provision unless the name itself inherently suggests a type of use.") (emphasis added); *see also Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) ("[A] use limitation *should not be read* into an *eo nomine* provision unless the name itself inherently suggests a type of use.") (emphasis added).

Nonetheless, the majority opinion appears to question our longstanding definition of eo nomine provisions when it attributes the following quotation to the United States Court of International Trade's ("CIT") opinion under review: "[The CIT] noted that the subheadings were *eo nomine* provisions and that, as such, they described 'an article by a specific name, *not by use*.'" *GRK II*, 761 F.3d at 1356 (quoting *GRK Can., Ltd. v. United States* (*GRK I*), 884 F. Supp. 2d 1340, 1345 (Ct. Int'l Trade 2013)) (emphasis in original). However, the majority opinion fails to acknowledge the CIT was directly and accurately quoting *this court's* case law. *See GRK I*, 884 F. Supp. 2d at 1345 ("The subheadings are eo nomine provisions, or more simply, provisions 'that describe[ ] an article by a specific name, *not by use*.'") (quoting *Aromont*, 671 F.3d at 1312) (citing *CamelBak*, 649 F.3d at 1364). The CIT's characterization reflects how our cases define eo nomine provi-

sions—by distinguishing them from use provisions. *See, e.g.*, *Aromont*, 671 F.3d at 1312 ("[T]his heading is an eo nomine provision, that is, a provision that describes an article by a specific name, *not by use*.") (emphasis added); *BASF Corp. v. United States*, 497 F.3d 1309, 1315 (Fed. Cir. 2007) (same); *Carl Zeiss*, 195 F.3d at 1379 (same).

Further, the majority opinion makes the following unsettling declaration:

> [U]se of subject articles may, under certain circumstances, be considered in tariff classification according to eo nomine provisions. This may occur at the stage of establishing the proper meaning of a designation when a provision's name "inherently suggests a type of use." Or, once tariff terms have been defined, it may be the case that the use of subject articles defines an articles' identity when determining whether it fits within the classification's scope.

*GRK II*, 761 F.3d at 1359 (quoting *Carl Zeiss*, 195 F.3d at 1379). Not only is this more permissive rule contrary to our case law, it also blurs the distinction between the legal question of what the subheadings cover—a pure question of law analyzed in a vacuum without regard to the particular merchandise involved in the case—and the factual second step of determining whether the goods fall within that properly-construed heading.

More troubling is the majority opinion's explicit endorsement of a use analysis and adoption of the ARIs in the context of an eo nomine heading:

> [U]se may be considered as part of the definition of *eo nomine* provisions, where, even if the *eo nomine* provision describes goods with respect to their names, the name itself may "inherently suggest[ ] a type of use." . . . Classification of subject articles may then need to reach the [ARIs], which distin-

guish the treatment of articles based on whether tariff classifications are controlled by principal or actual use.

*Id.* (quoting *Carl Zeiss*, 195 F.3d at 1379) & n.2. Any suggestion that the ARIs may need to be reached in the context of an eo nomine analysis is foreign to our classification case law, and conflicts with the clear statutory language of the ARIs. *See, e.g., Dependable Packaging Solutions, Inc. v. United States*, 757 F.3d 1374, 1378 (Fed. Cir. 2014) ("All the relevant HTSUS headings in this case are principal use provisions, which are governed by ARI 1(a)."); *Aromont*, 671 F.3d at 1312 ("Principal use provisions are governed by ARI 1(a)."); *see also* ARI 1(a) ("[A] tariff classification *controlled by use* . . . is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.") (emphasis added); ARI 1(b) ("[A] tariff classification controlled by the actual use to which the imported goods are put in the United States is satisfied only if such use is intended at the time of importation, the goods are so used and proof thereof is furnished within 3 years after the date the goods are entered.").

In addition, the majority opinion repeatedly references "intended use," "predominant use," and "primary use" within the context of its eo nomine analysis. *GRK II*, 761 F.3d at 1358–60. This exemplifies the rampant confusion among actual use, intended use, and principal use. These are terms of art governed by the ARIs, and are not synonymous or interchangeable. Existing confusion should be left to cases involving use provisions, and not be allowed to infiltrate our eo nomine cases. *See Aromont*, 671 F.3d 1310, 1313 (discussing the differences between principal use and actual use).

II.

In support of its holding that use plays a proper role in the eo nomine analysis, the majority opinion relies heavily on the Court of Customs and Patent Appeals' ("CCPA") 1959 decision in *United States v. Quon Quon Co.*, 46 CCPA 70 (1959), ignoring this court's contemporary classification cases, such as *Link Snacks*, 742 F.3d 962, *Kahrs*, 713 F.3d 640, *BASF*, 497 F.3d 1309, et al. Although the majority opinion acknowledges that "*Quon Quon* is a case determined under the old [Tariff Schedule of the United States ('TSUS')] that has now been replaced by the HTSUS," *GRK II*, 761 F.3d at 1358, the opinion fails to recognize the crucial point that the statutory interpretative framework required by the contemporary HTSUS, namely, *the GRIs and the ARIs, did not govern interpretations of TSUS*. While this court has acknowledged that "TSUS cases *may* be instructive in interpreting *identical language* in the HTSUS," *JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1355 (Fed. Cir. 2000) (emphases added), such cases are *not helpful in defining an interpretative framework that did not exist under the TSUS*. Not only are the GRIs and ARIs part of the HTSUS statute, this court has made clear they govern the classification of merchandise. *BenQ*, 646 F.3d at 1376.

The majority opinion's characterization of *Quon Quon* and similar TSUS cases is also not entirely accurate. The opinion states: "In TSUS cases, courts had considered the use of articles in interpreting *eo nomine* provisions." *GRK II*, 761 F.3d at 1356. No citation is given for this proposition because even under the TSUS it was uncommon for use to be considered in the eo nomine analysis. In *Quon Quon*, for example, the CCPA took issue with the Government's argument that "since the merchandise comes within the meaning of [an eo nomine] term, its *actual use is immaterial.*" *Quon Quon*, 46 CCPA at 72 (emphasis added). The court found "no support in [other TSUS]

cases for the allegation that use is immaterial because the designation is eo nomine." *Id.* In support, the CCPA identified three out of "numerous cases" cited by the Government where "use [was] an important factor in determining classification though an eo nomine designation [was] involved." *Id.* Thus, beyond its inapplicability to this case, *Quon Quon* stands only for the narrow proposition that, as a limited exception, use can sometimes be considered in the eo nomine analysis. In this way, the CIT's conclusion that it "cannot support *this instance* of reading use into an *eo nomine* tariff provision under the HTSUS," *GRK*, 884 F. Supp. 2d at 1353 (emphasis added), does not conflict with *Quon Quon*; it recognizes that use may be an appropriate consideration *in other instances*.

## III.

To be sure, there are limited circumstances where this court has considered use in the eo nomine analysis, such as those described in *CamelBak*, a unique case among our classification cases that has led to some confusion as to the role of use in the eo nomine analysis. In *CamelBak*, this court acknowledged that an eo nomine provision "'include[s] all forms of the named article[,]' even improved forms." *CamelBak*, 649 F.3d at 1365 (quoting *Carl Zeiss*, 195 F.3d at 1379). Nonetheless, the court articulated a test to determine when an additional component or function of an article, otherwise named by an eo nomine provision, so significantly transforms the article that it is no longer prima facie classifiable under the eo nomine heading. Thus, *CamelBak* describes the exceptional case where a good that was classifiable in an eo nomine heading undergoes "a change in identity [that] removes [the] article from an *eo nomine* provision." *Id.* at 1367; *id.* at 1369 ("[T]he hydration component of the subject articles is not merely incidental to the cargo component but, instead, provides the articles with a unique identity and use that removes them from the scope of the *eo nomine* backpack provision."). To aid in this inquiry, *CamelBak* went on to

identify "several analytical tools or factors [used] to assess whether the subject articles are beyond the reach of [an] *eo nomine . . .* provision," which include the design, use, and function of the subject articles. *Id.* at 1367. Yet, *CamelBak's* discussion of "use/function" and "design" was in the context of this significant transformation test, and this discussion cannot be read to obscure the difference between eo nomine and use provisions. *Id.* at 1367–68.

Thus, consideration of use in the eo nomine analysis is a narrow exception that has rarely been used by this court.[1] Indeed, if an eo nomine heading did "inherently suggest[] a type of use," it would be proper to convert it to a use provision. *See StoreWALL, LLC v. United States*, 644 F.3d 1358, 1365–67 (Fed. Cir. 2011) (Dyk, J., concur-

---

[1]    In addition to *Quon Quon* and *CamelBak*, the majority opinion finds support for its position from one other case: *Len-Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1311 (Fed. Cir. 2003), a sui generis case in which this court *may* have applied an exception; it is unclear. This court affirmed the CIT's proper construction of the eo nomine heading "vanity case," but added a clarification that reads like a use limitation: "In affirming the [CIT's] conclusion that 'vanity case' means 'a small handbag or case used to hold cosmetics,' however, we clarify that for a handbag or case to be classified as a vanity case, containing, carrying, or organizing cosmetics must be its predominant use, rather than simply one possible use." *Id.* Thus, despite undertaking an eo nomine analysis, the court in this instance relied on an analysis used only for use headings. Indeed, in support of its analysis, the court cited *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1393–94 (Fed. Cir. 1994). Not only was *Sports Graphics* a case involving a use provision, the heading at issue was a "chief use" provision of the TSUS. "Chief use" headings no longer exist in the HTSUS.

ring). Therefore, if, as the majority holds, the subheadings at issue are truly defined by use, the majority should have reconsidered the parties' legal stipulation that the relevant subheadings are eo nomine. A narrower holding that, although the subheadings appear to be eo nomine, they are as a matter of law use provision governed by the use analysis, would have avoided disruption of our well-settled precedent.

## IV.

Cognizant of these issues, in its Petition for Rehearing En Banc, GRK recognizes that "the majority decision of the panel improperly—and contrary to well-established and longstanding precedent of this Court—introduced an 'intended use' analysis into the analytical framework for construing *eo nomine* classifications, which is only appropriate for those classifications that are defined by how they are used." Pet. at 2. It also recognizes "[t]he majority decision is directly contrary to numerous precedents of this Court" and "[b]y requiring considerations of 'use' even with *eo nomine* provisions, it unnecessarily blurs (if not erases entirely) the well-established, and crucial, distinction between *eo nomine* provisions and 'use' provisions— each of which employs, according to this Court's precedents, a different analytical framework." *Id.* at 11.

In an attempt to downplay the importance of the distinction between use and eo nomine provisions, the Government suggests that "GRK's petition confuses the Panel Majority's discussion of intended use with the term of art 'principal use.'" Resp. at 2. Furthermore, it states, "GRK and the Panel Dissent misconstrue the Panel Majority's Opinion. Although the Panel Majority referred to 'the material that screws are principally intended to pass through,' and used the phrase 'principal intended use' . . . , the Panel Majority did *not* direct the trial court to undertake a principal use analysis." *Id.* at 4 (citations omitted).

The Government's argument ignores the majority opinion's explicit statement endorsing a use analysis. *See GRK II*, 761 F.3d at 1359 ("[U]se may be considered as part of the definition of *eo nomine* provisions . . . . Classification of subject articles may then need to reach the [ARIs], which distinguish the treatment of articles based on whether tariff classifications are controlled by principal or actual use."). This explicit directive that the ARIs, which are unquestionably used only in the use analysis, may be reached, refutes the Government's argument that "the Panel Majority did not order the trial court to conduct a principal use analysis on remand. It in no way directed the trial court to apply ARI 1(a)." Resp. at 5.

V.

A final concern with the majority opinion is that it is unclear whether the correct analysis was performed or whether the correct standard of review was applied. It is well-established that classification decisions involve a two-step analysis: (1) ascertaining "the proper meaning of the tariff provisions, which is a question of law reviewed de novo"; and (2) determining "whether merchandise falls within a particular heading, which is a question of fact we review only for clear error." *Lemans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011) (citing *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006)). It is also well-settled that when "the nature of the merchandise is undisputed, the inquiry collapses into a question of law we review de novo." *Id.* While the majority opinion correctly articulates the two-step process, it is unclear whether "the nature of the merchandise is undisputed" in this case, and, if so, whether only a question of law remains.

Instead, the opinion describes at length the CIT's analysis, both in the background and the analysis sections, and notes the errors the CIT made in its decision. But this court does not review classification decisions for

error; rather, it performs a de novo review.  In this way, the majority opinion fails to answer the legal question of the proper construction of the competing subheadings. This court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." *Link Snacks*, 742 F.3d at 965.  Although unclear, it may be that the majority disagrees with the CIT's construction of the competing subheadings.  The opinion, however, offers no answer, as a matter of law, on their proper construction, other than that the use of the subject merchandise involved in this case should have a bearing on the legal construction of the subheadings.

In addition to failing to fulfill its responsibility to determine the proper meaning of the competing subheadings, the majority opinion does not identify the governing GRI for this case.  It faults the CIT for sequentially proceeding through the GRIs, as required by our case law, and then "end[ing] up at the rarely used 'tie-breaker' step of GRI 3(c)."  *GRK II*, 761 F.3d at 1360.  However, it is unclear which GRI the majority believes should apply. That vital question, this court must answer.

As to the majority opinion's disposition, it does not specify whether remand is warranted because (1) there are genuine disputes of material fact precluding summary judgment, such that the CIT erred in granting summary judgment and the case should be remanded for trial; (2) there was legal error in the construction of the subheadings; and/or (3) there was clear error in the factual findings.  The grounds for vacation must be specified if we are to provide any guidance on the issues involved in this case.

## VI.

It is evident that this is indeed "'a challenging case.'" *GRK II*, 761 F.3d at 1356 (quoting *GRK I*, 884 F. Supp. 2d at 1345).  In disagreeing with the CIT's ultimate classification conclusion, however, the opinion undermines our

case law requiring a distinction between use and eo nomine provisions without articulating whether an exception applies in this case, or whether the subheadings at issue should be properly reclassified as use provisions at the beginning of the analysis.

Because the majority opinion upends a once-clear analytical framework and will breed confusion in future cases, the concerns raised are "of exceptional importance" and "en banc consideration is necessary to secure or maintain uniformity of the court's decisions." *See* Fed. R. App. P. 35(a). Therefore, I respectfully dissent from the court's refusal to reconsider this case en banc.